Charles DURNING, Appellee

v.

Justine BALENT/KURDILLA, Appellant.

Superior Court of Pennsylvania.

Argued March 28, 2011.

Filed May 2, 2011.

Joseph V. Sebelin, Jr., Lehighton, for appellant.

Matthew J. Rapa, Lehighton, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., ALLEN, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Justine Balent/Kurdilla (Mother) appeals from the order entered October 21, 2010, awarding joint legal custody and

shared physical custody of her son (Child) to Mother and Charles Durning (Father), Child's biological father. We vacate the trial court's order and remand for entry of an order consistent with this opinion.

Child was born in Carbon County in September 2005, and lived with Mother from the time of his birth until January 2010. Prior to the time of the entry of the order that gives rise to this appeal, custody of Child had been governed by an agreed-upon order of May 19, 2008. Pursuant to that order, the parties shared legal custody, while Mother was given primary physical custody and the right to relocate with Child to Alaska, where her husband was stationed as a member of the United States Army. Father was awarded partial physical custody during the summer months, as well as partial custody rights should Father travel to Alaska or Mother travel with Child to Pennsylvania.

In January 2010, Mother developed renal failure and was unable to care for Child. Mother requested that Father come to Alaska to get Child, but Father was financially unable to do so. Mother's mother (Maternal Grandmother) travelled to Alaska, obtained from Mother a medical power of attorney over Child, and brought Child to her home in Carbon County, Pennsylvania, where Child resided from the end of January to March 12, 2010.

On March 12, 2010, Maternal Grandmother allowed Father's parents overnight partial custody with Child. Father's parents were to return Child to Maternal Grandmother at the end of the weekend; however, Father decided to keep Child with him. On March 18, 2010, Father filed a petition to modify the prevailing custody order, seeking to obtain primary physical custody of Child. Upon regaining her health, Mother travelled to Pennsylvania

* Retired Senior Judge assigned to the Superior Court.

at the end of March or beginning of April to resume custody of Child, which Father refused.[1]

Following a custody conciliation conference on May 3, 2010, the trial court entered an interim order maintaining joint legal custody, awarding primary physical custody to Father, and providing a partial custody schedule for Mother. On May 28, 2010, Mother filed a petition for contempt, alleging that Father did not allow her to have partial custody on one of the scheduled occasions.

On August 31 and October 13, 2010, the trial court heard testimony relevant to all outstanding petitions. Father testified that he wished to obtain primary physical custody of Child at the residence he intended to acquire with his fiancée in Carbon County. Mother testified that she wished to retain primary custody of Child and relocate from Alaska to North Carolina, where her husband was reassigned.

The trial court issued an order on October 13, 2010, denying Mother's petition for contempt. On October 21, 2010, the court entered a final custody order awarding joint legal custody and shared physical custody on an alternate-week basis. Mother filed a notice of appeal of the final order on November 16, 2010, but failed to file simultaneously a concise statement of matters complained of on appeal as required by Pa.R.A.P. 905(a)(2) and 1925(a)(2)(i). The trial court entered an order on November 19, 2010, directing Mother to file her concise statement, which she did on December 9, 2010.

Mother's failure to file her concise statement along with her notice of appeal renders the notice of appeal defective, but does not divest this Court of jurisdiction. *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super.2009). We must determine whether this procedural defect warrants dismissal or other action on our part. *Id.* Appellee has not raised an objection to Mother's failure to comply with Pa.R.A.P. 905(a)(2) and 1925(a)(2)(i). The trial court has addressed the issues raised in Mother's untimely 1925(b) statement. We see no prejudice to any party resulting from Mother's failure to adhere to the procedural rules in this instance. As such, we will address the merits of Mother's appeal despite the defective notice rather than further delay resolution of this children's fast track matter.

■■■ In her brief, Mother raises the following issues on appeal, which we have re-numbered for ease of discussion:[2]

1. WHETHER THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY FINDING THAT SHARED CUSTODY WAS IN THE BEST INTERESTS OF THE CHILD WHEN THE CHILD IS SCHOOL AGE, THE MOTHER RESIDES IN NORTH CAROLINA

1. At various dates during the month of March 2010, Maternal Grandmother sought court intervention on Mother's behalf by filing a petition for modification, a petition for contempt, and a petition for special relief. These petitions were either denied due to lack of standing or dismissed upon their withdrawal, and are not relevant to this appeal.

2. Mother raised 11 issues in her concise statement, which the trial court consolidated and addressed as three issues in its opinion. These issues do not directly correspond with the three issues Mother states in her brief. Because Mother's three issues before us were raised, or fairly suggested by, issues raised in her concise statement, we will address them. We will not address, however, issues raised by Mother in her concise statement but not included in her brief on appeal. *See Southcentral Employment Corp. v. Birmingham Fire Ins. Co. of Pennsylvania*, 926 A.2d 977, 983 n. 5 (Pa.Super.2007) (noting that issues raised in the 1925(b) statement but not included in the brief are waived by Appellant).

AND THE FATHER RESIDES IN PENNSYLVANIA, AND THE COURT ORDERED A PRACTICALLY IMPOSSIBLE WEEK–ON/WEEK–OFF SCHEDULE?

2. WHETHER THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND/OR ERROR OF LAW BY NOT AWARDING MOTHER PRIMARY CUSTODY OF THE CHILD?

3. WHETHER THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND/OR ERROR OF LAW IN APPLYING THE GRUBER [3] ANALYSIS IN THAT THE COURT DID NOT CONSIDER THAT MOTHER WAS MOVING CLOSER AND NOT FARTHER AWAY AND THAT MOTHER WAS MOVING FOR HER HUSBAND'S MILITARY EMPLOYMENT?

Mother's Brief at 5. We consider Mother's issues mindful of the following:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

A.D. v. M.A.B., 989 A.2d 32, 35–36 (Pa.Super.2010) (internal quotations and citations omitted).

The trial court made the following findings that are supported by the record: that both Mother and Father love Child and are able to care for Child, that both parents want to have continuing involvement with Child, and that Child has a relationship with both parents. Trial Court Opinion (TCO), 1/16/2011, at 11, 13, 14. However, in reaching its conclusion that equally-shared physical custody between Mother and Father served Child's best interests, the trial court ignored much of the undisputed evidence before it.

The trial court based its decision on Mother living in Mahoning Township, at Maternal Grandmother's residence, in the same school district as Father. TCO, 1/16/11, at 16. The record evidence does not support a finding that Mother was present in Pennsylvania for any reason beyond seeking to regain primary custody of Child. Mother testified that her move to Pennsylvania was temporary. N.T., 10/13/2010, at 12. She was staying with Maternal Grandmother pending this custody determination, and then intended to rejoin her husband, with whom she and Child have resided for over two years, who was transferred from the Army base in Alaska to one in North Carolina. Id. at 13.

3. Gruber v. Gruber, 400 Pa.Super. 174, 583     A.2d 434 (1990).

All of the family's belongings had already been shipped by the Army to North Carolina, where Mother and her husband rented a five-bedroom house. *Id.* at 13–14, 48. Mother testified that she has recovered from her brief but serious illness. *Id.* at 54. Upon rejoining her husband, Mother would be able to resume her role as a stay-at-home mom. *Id.* at 28. She and her husband were expecting a child. *Id.* at 54.

Thus, the undisputed evidence before the trial court was that Mother returned to Pennsylvania from Alaska only because Father had usurped custody of Child during Mother's illness. Had Mother not become ill, child would have remained with her in Alaska until her husband was restationed in North Carolina.

■ Further, the trial court acknowledged, yet ignored the import of, the fact that Mother was Child's primary caregiver from his birth in September 2005 until Mother became ill in January 2010. TCO, 1/16/2011, at 4, 12. Child lived with Maternal Grandmother from January to March 12, 2010. Father's only time as primary caregiver to Child was from March 2010 until the trial court awarded shared custody in October 2010: seven of the 61 months of Child's life. When conducting a best-interests analysis, a court must "give positive consideration to the parent who has been the primary caregiver." *Collins v. Collins*, 897 A.2d 466, 473 (Pa.Super.2006) (relying upon, *inter alia,*

*Wiseman v. Wall,* 718 A.2d 844, 851 (Pa.Super.1998) (stating that the determining factor in a custody determination may be one parent's role as primary caregiver)).

Additionally, the trial court disregarded a number of factors that weigh against Father's having an increased custodial role from that provided for in the order he petitioned to modify. Father had never established a residence for himself, but rather bounced back and forth between the homes of his family, friends, and girlfriends. N.T., 8/31/2010, at 60–62. Father does not have a permanent job; he had moved from one temporary position to another. *Id.* at 58–60. Father unilaterally took custody of Child on March 12, 2010, when he refused to return Child to Maternal Grandmother. Most concerning, Father pled guilty to assault of a minor and endangering the welfare of a minor in connection with physical abuse of his 18-month-old child by another woman in 2008. *Id.* at 48–50.

The trial court further determined that Mother did not offer evidence to establish that the *Gruber* factors[4] warranted her relocation with Child to North Carolina. Specifically, the trial court found that Mother did not offer evidence to show: that the move to North Carolina would improve the quality of life of Mother or Child, that the move was predicated upon a desire for Mother to return to family or friends, that the move offered enhanced

---

4. *Gruber* requires a court deciding a request to relocate to consider
   (1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;
   (2) the integrity of the motives of both the custodial and noncustodial parent in either

seeking the move or seeking to prevent it; [and]
   (3) the availability of realistic, substitute [partial custody] arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*J.P. v. S.P.,* 991 A.2d 904, 907 (Pa.Super.2010) (citations omitted).

economic or educational opportunities, what the motives of the parties were, or what alternate partial custody arrangements were available. TCO, 1/16/2011, at 20–21.

Based on the applicable case law and the evidence of record, we conclude that Mother is correct in all three of her claims of error. Because we believe the record is sufficiently developed, we exercise the option to decide this case on its merits rather than to remand for a new determination. *Collins*, 897 A.2d at 478 n. 11.

■ First, because Mother's stop in Pennsylvania was only to regain custody of Child on her way to rejoin her husband in North Carolina, the trial court's decision to order shared physical custody of Child on a week-on/week-off basis is unreasonable. Awarding shared physical custody of a school-age child of parents who do not live in geographical proximity to each other is contrary to a child's need for continuity at home and at school. *See, e.g., Fisher v. Fisher*, 370 Pa.Super. 87, 535 A.2d 1163, 1165–66 (1988) (holding that the trial court abused its discretion in ordering annual shifts of physical custody between parents who lived in Philadelphia and St. Louis).

■ Second, we hold that the trial court abused its discretion in failing to maintain primary physical custody of Child with Mother based on "Mother's historical role as caregiver" and the "potential dangers of disruption of established patterns." *Johns v. Cioci*, 865 A.2d 931, 940 (Pa.Super.2004). Child has lived with Mother for virtually all of his life. We are not writing here on a clean slate: until Father unilaterally took custody of Child while Mother was ill, Mother had exercised primary custody pursuant to court order. Courts should be

"reluctant to disturb custody arrangements which have satisfactorily served the best interests of the child." *Wiseman*, 718 A.2d at 846. As such, we conclude that Mother should retain primary physical custody of Child.

■ Third, we conclude that the trial court erred in finding that it was not in Child's best interests to relocate with Mother from Alaska to North Carolina. The *Gruber*[5] factors, "while important, are but one aspect of the overall best interest analysis that is required when a court is formulating a primary physical custody order as well as deciding a petition for relocation." *Collins*, 897 A.2d at 472.

Considering the first *Gruber* factor, Mother's desire to move to North Carolina to be with her husband obviously was not a whim. While Mother did not offer evidence of enhanced economic opportunities, "the court may not ignore or underestimate any factors which are likely to contribute to the well-being and general happiness of the custodial parent and the children." *Billhime v. Billhime*, 869 A.2d 1031, 1038 (Pa.Super.2005). Allowing Mother to live with her husband and to continue to be a stay-at-home mother to Child, which has been the arrangement to which Child has been accustomed since 2008, obviously will contribute to the well-being of Mother and Child.

Regarding the second *Gruber* factor, there is no suggestion in the record that Mother's motives were suspect. The Army transferred Mother's husband from Alaska to North Carolina, and she wants to remain with him. If any party has suspect motives, it is Father, who consented to Mother's having primary custody of Child in Alaska, but who now opposes her

---

5. We analyze this case using a *Gruber* rubric. However, under the unusual factual circumstances, where Mother already had custody and had been permitted to relocate to Alaska, we do not decide whether a *Gruber* analysis is required.

and Child moving to a residence that will allow Father far greater opportunities for partial custody.

As for the third *Gruber* factor, partial custody arrangements to foster Child's ongoing relationship with Father clearly are far more realistic with Child living in North Carolina than they were when Child was in Alaska.

Given Mother's role as primary caregiver for the majority of Child's life, we hold that the trial court abused its discretion in modifying the May 19, 2008 custody order to take primary physical custody away from Mother. We further hold that the trial court erred in determining that Mother had failed to meet her burden under *Gruber.* Based on the record evidence, Mother is entitled to retain primary physical custody and to relocate with Child to North Carolina.

Order vacated. Case remanded for entry of a custody and partial custody order in conformity with this opinion. Jurisdiction relinquished.