**J.R.M., Appellant**

**v.**

**J.E.A., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 21, 2011.

Filed Dec. 5, 2011.

**648**

Melissa M. Gormly, Indiana, for appellant.

Kerith S. Taylor, Brookville, for appellee.

BEFORE: BOWES, DONOHUE and FREEDBERG, JJ.

OPINION BY DONOHUE, J.:

J.R.M. ("Father") appeals the order entered by the Court of Common Pleas, Jefferson County, granting J.E.A. ("Mother") primary custody of their infant son, J.M.A. ("Child"), and imposing restrictions on his periods of partial custody. After careful review, we vacate and remand for further proceedings.

After dating for approximately one month, Mother and Father became engaged to be married. Two months later, they found out that Mother was pregnant. By that time, Mother and Father were experiencing trouble in their relationship. They separated soon thereafter.

After their breakup, Mother and Father had a very difficult time communicating with each other. To that end, Mother did not inform Father when Child was born. Upon learning that Mother had given birth to Child, Father contacted her so that he could have visitation with Child. Mother arranged for her employer, Steve Plyler ("Plyler"), to contact Father and arrange for Father to visit with Child. Father grudgingly arranged visits through Plyler, and began to visit with Child at various locations with Plyler and/or another individual present.

Mother filed a complaint for custody on December 10, 2010, seeking shared legal and primary physical custody of Child. On December 14, 2010, Father also filed a complaint for shared legal and primary physical custody of Child. A custody conciliation conference was held on January 5, 2011, which did not successfully resolve the custody matter, and the case was set for a hearing before a judge.

After the conference but before the custody hearing, the parties informally agreed that Father would visit Child on Tuesdays and Fridays from 5:00 p.m. until 8:00 p.m. and on Sundays from 10:00 a.m. until 12:30 p.m. at Mother's church in DuBois. Father lives approximately two hours away, in Glenshaw, and eliminated the Sunday visits because of the distance. He further routinely terminated the weekday visits an hour early, as Child exhibited signs of

tiredness at around 7:00 p.m., which was close to his bedtime while at home with Mother.

Father has attended almost all of the 30 scheduled visits, with several cancellations for illness and inclement weather, and one where Father did not show. Mother is present in the church during the visits, but not in the room with Father and Child. At times, Father will solicit Mother's help in soothing or changing Child.

Mother is breastfeeding Child and contemplates that she will continue doing so until Child is eight months old. She is currently on leave from her job with Pepsi, and is working as a babysitter for Plyler's children. She resides in a basement apartment in Plyler's home. Father resides with a woman who is both his ex-wife and current fiancé. He is employed in a management position at a YMCA in Indiana County, Pennsylvania.

A consolidated custody hearing on both petitions was held before the trial court on March 25, 2011. At the conclusion of the evidentiary hearing, the trial court granted the parties' request for joint legal custody of Child, awarded Mother primary physical custody, and ordered Father to have partial custody of Child as follows:

A. Until the child reaches the age of eight (8) months or is no longer breast feeding, whichever occurs sooner, Father will continue to have temporary custody three (3) days per week, mainly Tuesday and Friday from 4:00 p.m. to 7:00 p.m., and Sunday from 1:00 p.m. 4:00 p.m., with said periods of custody to be exercised either by the church in DuBois where the parties were meeting recently or such other location as the parties may agree.

B. During these periods of partial custody, Father will be entitled to private time with his son; although, Mother or any other suitable care giver [sic] may be in the general area but not in the same room.

C. When the child reaches eight (8) months of age or is done breast feeding [sic], whichever is sooner, parties will agree on a location for Father's periods of custody in the general vicinity of Indiana, Pennsylvania, and all his periods of time with the child will be expanded by one (1) hour each day as with specifics to be agreed upon by the parties.

D. The long term goal of this Court for Father is that when the child is of the appropriate age, the child should be able to visit Father at his home and at appropriate overnights.

Trial Court Order, 3/28/11, at ¶ 2.[1] The trial court further ordered that all communication between Mother and Father occur via email unless the parties otherwise agree. The trial court filed its findings of fact in support of its order on April 13, 2011.

1. In her appellate brief, Mother asserts that the trial court's order is not a final, appealable order as it was "subject to modification should either party relocate." Mother's Brief at 1 (quoting Trial Court Order, 3/28/11, at ¶ 5). This contention is incorrect, however, as the trial court entered its order after conducting a hearing on the merits, the order was intended to resolve the custody claims pending between the parties, and further proceedings would only be initiated upon application of one of the parties. *See In re F.B.,* 927 A.2d 268, 271 (Pa.Super.2007). Indeed, custody orders are always subject to modification if new circumstances arise that affect the best interest of the child, and this does not affect the appealability of such an order. *See Arnold v. Arnold,* 847 A.2d 674, 677 (Pa.Super.2004).

Father filed a timely notice of appeal and concise statement of matters complained of pursuant to Pa.R.A.P. 1925(a)(2)(i) on April 25, 2011. The trial court did not file a written opinion pursuant to Pa.R.A.P.1925(a)(2)(ii). Father raises the following issues on appeal for our review:

I. Did the trial court abuse its discretion in awarding primary physical custody of the child to Mother where the court did not engage in a fact-specific, case-specific analysis of the best interest factors and made no findings to support its legal conclusion that such a custody arrangement is in the child's best interest?

II. Did the trial court err in placing restrictions on Father's periods of partial custody after the child reaches the age of eight (8) months or is no longer breastfeeding, by limiting the duration to four hours, not permitting visits to occur in Father's home, not awarding overnight visits, and permitting Mother or any other suitable caregiver to be present during the periods of partial custody, where the trial court made no findings that such severe restrictions were necessary?

Father's Brief at 5.[2]

▬ Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*Durning v. Balent/Kurdilla,* 19 A.3d 1125, 1128 (Pa.Super.2011) (citation omitted). "[P]rior to the formation of a custodial order, the parents stand on equal footing and the only burden carried by either of them is to establish what is in the best interest of the child." *Burkholder v. Burkholder,* 790 A.2d 1053, 1058–59 (Pa.Super.2002); *see also* 23 Pa.C.S.A. § 5327(a) ("In any action regarding the custody of the child between the parents of the child, there shall be no presumption

**2.** On August 31, 2011, this Court received correspondence from the trial court requesting that we relinquish jurisdiction and remand the case to the trial court. The request was made after Mother filed a petition to modify the custody order, as Father had relocated to Indiana, Pennsylvania. The trial court premised its request on the fact that "certain of the arrangements provided for in the [o]rder under appeal are based on geo-graphic considerations which are no longer accurate," and "a plethora of other issues" that arose after Father filed his notice of appeal. Trial Court Correspondence, 8/31/11. Because the issues raised by Father on appeal are not addressed in either Mother's petition to modify the custody order or the trial court's request for remand, we decline to relinquish jurisdiction in this matter.

that custody should be awarded to a particular parent.").

In its opinion in support of the custody order, the trial court found, in relevant part, as follows:

As noted in the findings, there has been a substantial break down in communications between the parties, such that communications have been limited to text messages. While [F]ather desires more open communications, [M]other is opposed to this based on her history with [F]ather. At the same time, she seems to believe that [F]ather should have a role in the child's life, and she is willing to make reasonable accommodations for that to happen.

In accordance with medical advice, [M]other is nursing [Child] and will continue to do so for the next few months. In view of [Child's] young age, and the fact that he is nursing, his mother has been in close proximity to visits which have been scheduled through friends of mothers, or at mothers church in the Dubois, Clearfield County, area. An order was entered which over time, expands [F]athers [sic] rights. While the order is not comprehensive on a long term basis, the court believes that if the parties can improve their communications, which will be limited to emails at the present time, they can be effective parents for [Child] and be very positive parts of his life. When Child is older, and not nursing, the court sees no reason why he should not spend more time with his father who like mother, loves him very much, thus the order of March 25, 2011[.]

Findings of Fact and Discussion in Support of Order Entered March 25, 2011, on Consolodated [sic] Custody Cases, 4/13/11, at 3–4.

■ Father directs us to 23 Pa.C.S.A. § 5328(a), a newly enacted section of the child custody statute, which delineates factors the trial court must consider when awarding any form of custody. *See* Father's Brief at 12. Father argues that because the trial court failed to specifically address those factors and conduct a case-by-case analysis of what is in Child's best interest, the trial court's order must be reversed. *Id.* at 13. Father further argues that the record supports a finding that he, not Mother, should have been awarded primary physical custody of Child, and the trial court therefore erred by reaching the conclusion it did. *Id.* at 14–15.

Section 5328(a) provides:

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in

cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). We agree with Father that the trial court erred by failing to consider the factors it was required to consider in rendering its custody decision.[3]

As is reflected in the above-quoted portion of the trial court's discussion on its findings of fact, the trial court based its decision almost exclusively on the fact that Child is breastfeeding and the parties' difficulty communicating with each other. It made no mention of which party would be more likely to encourage contact with the noncustodial parent,[4] the parental duties performed by each parent, which party could provide greater stability and continuity for Child, the presence of extended family, attempts by either party to turn Child against the other parent, the parent that is more likely to provide a relationship consistent with Child's emotional needs, which parent is more likely to attend to Child's daily physical, developmental, educational, and emotional needs, any drug or alcohol abuse by either parent and his/her household members, or the mental and physical condition of each parent and members of his/her household.

All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order. *Id.* As the trial court failed to properly consider the statutorily mandated factors in arriving at its custody determination, it erred as a matter of law. We are therefore compelled to vacate its order and remand the case for further findings of facts.[5]

---

3. The trial court's opinion likewise does not appropriately consider the factors required under section 5328(a)'s predecessor statute. *See* 23 Pa.C.S.A. § 5303(a) (repealed effective January 24, 2011).

4. Although the trial court considered whether Mother would be willing to allow Father to have contact with Child, it made no finding regarding whether Father was likely to encourage and permit frequent contact between Mother and Child if he was granted primary physical custody of Child. *See* 23 Pa.C.S.A. § 5328(a)(1).

5. Father and Mother both encourage this Court to makes its own findings of fact and credibility determinations based upon the testimony presented at the custody hearing. *See* Father's Brief at 14–15; Mother's Brief at 10–13. We decline this invitation, as it is the role of the trial court, not this Court, to make independent factual determinations based upon the evidence presented. *Collins v. Collins,* 897 A.2d 466, 471 (Pa.Super.2006).

■ Father further appeals the trial court's imposition of several restrictions on his periods of partial custody, arguing that the restrictions were imposed without any justification.[6] Father's Brief at 15–17. Upon reviewing the record, we are again constrained to agree.

■ An award of partial custody generally does not contain any restrictions. *Fatemi v. Fatemi*, 339 Pa.Super. 590, 489 A.2d 798, 801 (1985). "A restriction will be imposed if the parties have agreed to a restriction or if the party requesting a restriction shows that without it, partial custody will have a detrimental impact on the child." *Id.; see also* 23 Pa.C.S.A. § 5323(e) ("[I]f the court finds that there is an ongoing risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse, the court shall include in the custody order safety conditions designed to protect the child or the abused party.").

The record reflects that the trial court imposed restrictions on Father's periods of partial custody. First, the trial court ordered that "Mother or any other suitable care giver [sic]" may be present in the area where Father is visiting with Child. Trial Court Order, 3/28/11, at ¶ 2B. Although the fact that Mother is breastfeeding Child may have served as support for ordering that Mother is permitted to be present in the area during visits, there is no indication in the record or in the trial court's findings of fact as to why another "suitable" caregiver would need to be present while Father visits with Child. The trial court made no finding that Father was unfit or unable to care for Child on his own, or that he posed any sort of threat to Child if left entirely unattended.

The trial court further disallowed Father from having visits with Child in his home or having overnight visitation with Child, indicating that it was a "long term goal" for Father to be able achieve such visitation in the future, "when the child is of the appropriate age[.]" Trial Court Order, 3/28/11, at ¶ 2D. The trial court made no finding that visitation in Father's home would be detrimental to Child, that Father's home was not equipped to have Child visit during the day or for overnight visitation, or that Father or his fiancé posed a threat to Child. Indeed, Father testified that he has a room furnished and set up for Child, and presented pictorial evidence to the trial court. N.T., 3/25/11, at 72–73. The record further reflects that Father's fiancé has attended Father's visits with Child, and there were no concerns expressed about her interaction with Child. *See id.* at 30. Moreover, while Mother testified that it would be a hardship for her to make the two hour drive to Father's house with Child while Child is still breastfeeding every two-to-three hours, there is no evidence of record that supports a finding that Child could not travel such a distance once he is weaned. *Id.* at 29–30.

The trial court imposed restrictions on Father's periods of partial custody without support in the record that the parties

6. We recognize that based upon our resolution of the first issue raised by Father, the trial court could, on remand, determine that the record supports a finding that Father is entitled to primary physical custody of Child, rendering moot the second issue raised on appeal. We nonetheless address the remaining issue raised by Father because this is a Children's Fast Track appeal, and if the trial court concludes that Mother should be awarded primary physical custody, the issue of Father's periods of partial custody can also be expeditiously addressed by the trial court. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa.Super.2009) (indicating the purpose of the Children's Fast Track designation is to "expedite the disposition" such cases).

agreed to the restrictions or that the restrictions were necessary to protect Child from some detrimental impact or safety concern. *Fatemi,* 489 A.2d at 801; 23 Pa.C.S.A. § 5323(e). The imposition of such restrictions are therefore unreasonable in light of the evidence of record. *Durning,* 19 A.3d at 1128.

In summary, because the trial court failed to account for the required factors in reaching its custody determination, we reverse the decision of the trial court and remand for the consideration of said factors and for further findings of fact. In the absence of a determination that Child would suffer a detrimental impact by having unsupervised visits with the noncustodial parent, the trial court shall enter an order granting unsupervised periods of partial custody for the noncustodial parent.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.