C.C. v. R.W.W.

C.P. of Delaware County, Nos. 2014-001370; 206 EDA 2015; 253 EDA 2015

*Katie Scrivner*, for appellant.
*Yalonda Houston*, for appellee.

DOZOR, *J.*, Jan. 21, 2015—

OPINION[1] [2]

This Appeal is considered as a direct appeal from this court's December 19, 2014 "final custody order." The nature and history of the case is as follows:

On February 12, 2014, appellee (hereinafter "father") filed his custody complaint, as a self-represented party, and this court notes that father's initial custody complaint

---

1. This court is unsure why the Superior Court issued two different docket numbers related to mother's appeal. Although both appeals appear identical, in an abundance of caution this court is referencing both Superior Court docket numbers.

2. This court notes that the case before the trial court is docketed as *R.W.W., Jr. v. C.C.*, as Father was the party who initially filed the custody complaint that began this action, appellant mother has transposed the caption of the underlying case.

requested that the court award the parties joint legal and physical custody of minor child. As a result of the custody complaint filed by father, the parties participated in a custody conference before master Freeman on March 17, 2014. Since mother was in Florida on March 17, 2014, she was permitted to participate in the master's conference via telephone. On March 17, 2014, master Freeman issued a temporary custody order which was signed by The honorable Ann Osborne on March 21, 2014. This temporary custody order provided the parties with joint legal custody and mother primary physical custody subject to father's partial physical custody every weekend in Florida. The temporary custody order provided that father's custody in Florida should be "supervised;" however, master Freeman clarified that the supervision was only implemented because father would be travelling to Florida and would not have the benefit of all the necessary equipment required for the minor child who was just over one year old at the time the order was entered on March 17, 2014.

Father filed an amended custody complaint on June 6, 2014 requesting joint legal custody and amending his request for *full/sole* physical custody of minor child since mother had improperly relocated to Florida.

On July 15, 2014, this court held a pre-trial conference and thereafter, on July 17, 2014, this court issued a temporary custody order and order confirming jurisdiction in Delaware County, Pennsylvania and determined:

that mother was aware of the custody complaint filed by father at the time she fled to Florida. This court also determines that although she was aware of the custody complaint, mother did not seek consent to move with

minor child; rather mother told father she was moving to Florida with minor child. Father did not provide consent for mother and minor child to move to Florida. Thereafter, mother moved to Florida then provided father an address of her new residence. Mother failed to comply with the Pennsylvania Statute regarding relocation 23 Pa. C.S.A. §5337(c).

*See* trial court order, July 17, 2014, p. 2 ¶ 4. The July 17, 2014 order also determined that "mother still has not complied with the Pennsylvania Statute, 23 Pa. C.S.A. §5337(c), regarding relocation, specifically, mother has not filed a notice of relocation, a petition to relocate or the appropriate affidavit of consent from father." *See* trial court order, July 17, 2014, p. 2 ¶ 5. This court also found that "due to mother's unapproved relocation to Florida, the finances of the parties and minor child's very young age, father has had no contact with minor child since February of 2014." *See* trial court order, July 17, 2014, p. 2 ¶ 6.

This court's July 17, 2014 order also provided parties with temporary custody as follows, until further order of the court:

a. Mother and father have joint legal custody.

b. Mother and father shall have joint physical custody as follows:

i. Without prejudice and with this trial court scheduling a custody trial in this matter for November 19, 2014. This court notes that since there was no notice of relocation provided to father pursuant to 23 Pa. C.S.A. §5337(c) nor was there a petition to relocate filed of record by mother, this court is not scheduling a hearing

on mother's relocation to Florida at this time.

ii. Temporarily and subject to the conditions as set forth in this order, the minor child may temporarily reside with mother in Florida at, 3200 Broad Street, Brooksville, FL 34604, until further order of this court.

iii. Mother shall have custody from the date of this order until Saturday, July 28, 2014 when father will receive custody of minor child in the area of the Tampa airport in Tampa, Florida, or as otherwise mutually agreed to by the parties. Father shall have custody from July 26, 2014 until August 16, 2014. Father may enjoy his custodial periods of time with minor child in either the Commonwealth of Pennsylvania or the State of Florida.

(a.) Within five days of this order, no later than July 22, 2014, father must provide mother with a complete travel itinerary, including flight numbers, airline name and flight times, if applicable.

(b.) Within five days of August 16, 2014, mother must provide father with an approximate time she will receive custody of minor child on August 16, 2014. Mother is to provide father with flight times, airline name and flight numbers, if applicable. The exchange of minor child shall occur at father's current residence, unless otherwise mutually agreed upon by the parties.

iv. Thereafter, father is to have three weeks custody of minor child in both September and October. Father's scheduled September period of custody is to begin *after* September 8, 2014 at 10:30, so that minor child may attend a well-baby visit with her doctor which has

already been scheduled.

v. Father is to provide mother with *10 days* notice of his intended start date his custodial time in the months of September and October.

vi. Thereafter, mother has *10 days* to inform father of the date and approximate time she will begin her custodial period, keeping in mind that this court had provided father with three weeks (21 days) of consecutive custody of minor child.

vii. *Father's custodial time during the months of September and October are not to thwart or frustrate mother's custody.* The court determines that father may not elect to take back to back three week periods of time from September into October, thereby essentially having removing custody of minor child from mother. Father's custodial periods in September and October *must* provide mother with a minimum of two and a half weeks of custodial time in between father's custodial periods.

viii. The party receiving custody of minor child is responsible for *all* travel expenses for themselves and minor child. Either party may elect to drive, fly or travel by train or bus to take custody of minor child.

ix. All travel itineraries must be provided to the other party prior to minor child traveling. That means, both parties shall be informed of how minor child is traveling to and from Florida and Pennsylvania and be provided with the appropriate flight times, flight numbers, bus or train information.

x. Either party may elect to have minor child dropped off or picked up by a responsible family member, mother's fiancee or a member of finance's family. However, notice of the name of that responsible person must be communicated to the other party prior to the custody exchange.

c. The parties are to exchange or provide to each other a copy of minor child's birth certificate and medical/ insurance cards, prior to or during the first exchange of minor child on July 26, 2014.

d. Minor child is to have *daily* contact with the non-custodial parent via the skype/facetime or any other internet communication at this time due to the young age of minor child. This contact is to occur between *6:30 and 7:00 PM daily*, unless otherwise agreed or modified by the parties based upon their schedules.

*See* trial court order, July 17, 2014, p. 2 ¶¶7-9.

Following the pre-trial conference on July 15, 2014, this court issued a letter scheduling the custody trial in this case for December 9, 2014.

This court notes that was not until October 27, 2014 that mother filed her notice of relocation and it was not until November 5, 2014 mother filed her complaint in custody seeking primary physical custody of minor child. On November 14, 2014, father filed his counter-affidavit, objecting formally to mother's relocation to Florida. On November 19, 2014, this court held the custody and relocation trial.

On December 19, 2014, this court issued a final custody order, which addressed all the relevant custody

and relocation factors and ultimately denied mother's relocation to Florida. The December 19, 2014 final custody order also provided for custody of minor child shall be jointly shared between the parties as long as mother relocated to Delaware County, Pennsylvania. This court further determined that should mother not relocated to Delaware County, Pennsylvania, father shall have primary physical custody of minor child subject to mother's partial physical custody. Mother was required to return to Delaware County, Pennsylvania, the jurisdiction of this court, within sixty (60) days of the date of the final custody order.

On January 20, 2015, appellant mother filed an "emergency application for stay of denial of relocation petition pending appeal" directly with the Superior Court. Thereafter, the Superior Court issued an order directing appellee to file an answer to the motion pending on or before January 27, 2015.

On January 20, 2015, appellant mother also filed her timely "notice of appeal" and her "concise statement of matters complained of on appeal."

This court notes that no request was made by this court of either appellant pursuant to Pennsylvania Rules of Appellate Procedure 1925(a) for a concise statement of matters complained of on appeal as appellant filed her concise statements contemporaneously with their notice of appeals. On January 22, 2015, this court received a letter from the Superior Court informing this court that the appeals in this case have been designated as a "children's fast track appeal."

Appellants' concise statements of matters raised on

appeal alleges that this court committed an abuse of discretion by failing to give the evidence presented the appropriate weight, by improperly analyzing the custody factors set forth in 23 Pa.C.S.A. Section 5328(a)(1) through (16) and awarded the parties shared physical custody and by denying mother's petition to relocated to Florida and requiring mother to return to the Commonwealth of Pennsylvania within sixty (60) days.

## FACTS:

Father, who is presently 19 years of age, resides on West Chester Pike, West Chester, Delaware County, Pennsylvania 19382 with his father, paternal grandfather. Mother, who is presently 19 years of age currently, resides on Broad Street, Brooksville, FL 34604, with her fiancé and his grandmother. The parties were never married and are the natural parents of one minor child: E.R.W (DOB 1/25/2013), currently, two years old.

During the custody trial, this court heard testimony that mother and father dated while they both attended High School in West Chester, Chester County, Pennsylvania. Father was a senior in high school and mother was a junior in high school when they learned of mother's pregnancy with minor child. Mother candidly testified that her and her mother have had difficulty in the past getting along and living together and as a result, mother lived with father as well as her own grandmother at times before, during and after her pregnancy. Mother testified that since she was eight (8) years old, she has moved in and out of her mother's residence.

This court notes that father testified that from September of 2012 until June of 2013 mother and father and then

minor child, resided together in father's family home. This court notes that mother's testimony was that during the period of time between March/April of 2013 and August of 2013, she resided with her mother in Delaware County, Pennsylvania. Regardless of mother's testimony it was clear that mother lived with father, with minor child, for at least three months following minor child's birth. From August 2013 to September 2013, mother and minor child briefly lived in the State of Delaware, in New Castle County, which is a very short distance from the border of Delaware County, Pennsylvania, with mother's grandmother. This court notes that from September 2013 until either late February 2014 or March of 2014, mother and minor child resided with mother's mother in Delaware County, Pennsylvania. Mother was unable to provide this court with the date in which she moved from her mother's residence to the residence which she procured in Brooksville, Florida with her now fiancee and his grandmother. From at least March 17, 2014[3] until the present, mother and minor child have resided in Brooksville, Florida.

As this court heard the testimony and was able to view the witnesses in this case, in issuing the final custody order, this court did not credit the testimony of mother that she asked father if she could relocate to Florida with minor child and Father refused to provide consent. This court determined that mother simply informed father that she was moving to Florida. This court also notes that at the time of trial, mother was engaged and was living with her

---

3. March 17, 2014 was the date of the custody conference before master Freeman, during which Mother participated via telephone conferencing because she was residing in Florida.

fiancé, his grandmother and his mother and two brothers. This court also notes that mother testified, but provided no evidence, that her fiancé's mother and brothers were moving out of the residence as the custody trial began.

This court heard testimony that mother's residence in Florida is a three bedroom permanent mobile home in Brooksville, Florida. This court notes that mother, her fiancee and his grandmother, as well as minor child, are all listed on the lease for the Brooksville, Florida residence. This court also notes that mother did have a job when she left Pennsylvania. This court also notes that when mother relocated in Florida, she did so without having a job secured in Florida and mother did so during her senior year of high school and therefore, mother did not have a high school diploma. Upon relocating to Florida, mother entered high school in Brooksville, Florida and graduated from Hernando High school in May of 2014. *See* defendant's Exhibit, D-6.

Mother testified that she currently works part time as a companion caregiver at a pay rate of $8/hour. This court notes that mother provided this court with her paystub for her current employment. Mother's paystub indicated that mother was only hired and began her current employment on October 22, 2014, almost seven months after mother's relocation in Florida and just one month prior to this custody trial. *See* defendant's Exhibit, D-5.

This court also notes that mother is currently engaged, having gotten engaged in May of 2014, to a man, who is eighteen (18) years of age and who does not have a high school diploma or a GED. Mother candidly testified that there is no wedding date set yet and mother also candidly

testified that she is currently pregnant and due April 6, 2015. Mother's fiancé, who is or was her sole means of support prior to mother's part-time employment began in October, is employed as a general contractor in Florida.

A review of the record and testimony reveals that father's financial position in life is not significantly different then mother, as both parties are working in low paying part-time jobs. However, this court notes that father's support system is his father (with whom he lives with), his mother, his sister and various other members of father's extended family who live in the area. Whereas mother's support system are virtual strangers to mother, consisting of her fiancee and his grandmother. This court notes that mother's relationship with her own family is strained. This court notes that mother candidly testified that she relies heavily on her fiancee and his grandmother for financial and childcare assistance. Additionally, this court found it significant that mother's only support system, her fiancee and his grandmother did not testify on her behalf, nor attended the custody trial, have no obligation or duty to continue to support mother into the future.

Father completed his senior year of high school and graduated in June of 2013. Father is currently attending a school for welding, which is located in Delaware County, Pennsylvania as well as working part time as a bagger at the Giant in Westtown, Chester County, Pennsylvania. Father does not have a driver's license and takes public transportation, walks or relies on rides from family and friends. Father currently lives with paternal grandfather in a two bedroom apartment. Both father and paternal grandfather candidly and credibly testified that they are planning to move to a three bedroom single family home

in Aston, Delaware County, Pennsylvania.

This court heard the candid and credible testimony of mother, father and father's family that both parties cannot financially continue to fly to and from Florida every three weeks in perpetuity. This court notes that until minor child turned two on January 25, 2015, the parties were only required to purchase one ticket for the trips to and from Florida; however, after January 25, 2015, minor child will no longer be able to be a "lap child" according to airline rules and regulations and therefore the parties must now purchase her a ticket.

This court heard credible testimony that father saw minor child every other weekend until just before mother moved to Florida without consent. This court heard credible testimony that prior to mother's relocation to Florida in March of 2014, father was unable to see minor child during the month of February for his regular alternating weekends as a result of mother withholding minor child from father. This court notes that mother disputed father's contention that he saw minor child regularly; however, the overwhelming testimony presented demonstrated that father did see and wanted to see minor child regularly. This court found it significant that when mother began withholding physical custody of minor child from Father in February of 2014, father took immediate action and filed his complaint for custody on February 12, 2014. Mother fled the jurisdiction of this court, where she was residing at the time she absconded to Florida, after mother received notification that father had filed his complaint for custody on February 12, 2014.

This court heard credible testimony that despite the

fact that minor child had not seen father since February of 2014, minor child reacted positively to seeing her father July 28, 2014.

This court also found it significant that after mother moved to Florida, her family only began seeing minor child routinely while minor child was in father's custody. This court heard candid testimony that father cooperates with mother's extended family and while minor child is in Pennsylvania, father makes every effort for mother's family to spend quality time with minor child. This court was also pleased with the effort of father's mother and mother's mother to spend time together with minor child so that minor child would see her extended family in a positive atmosphere.

## DISCUSSION:

The appellate courts have consistently determined that

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of

the trial court.

> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*D.K. v. S.P.K.*, 2014 PA Super 218, 102 A.3d 467, 478 (2014) citing *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (quoting *Durning v. Balent/Kurdilla*, 2011 PA Super 90, 19 A.3d 1125, 1128 (2011)); *Durning v. Balent/Kurdilla*, 19 A.3d at 1128 (2011) quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) (internal quotations and citations omitted).

In its supreme wisdom, the Pennsylvania legislature has enacted a statue, Title 23 Pa.C.S.A. Section 5328(a) to delineate the "factors the trial court must consider when awarding any form of custody." *J.R.M. v. J.E.A.*, 33 A.3d at 651. Section 5328(a) sets forth a list of 16 factors that trial courts must consider "in a best interests of the child analysis in making any custody determination." *E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011) (citing 23 Pa.C.S.A. §5328(a)) (footnote omitted).

The sixteen factors listed in section 5328(a) that trial courts must consider when determining a child's best interest are:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

> (2) The present and past abuse committed by a party or member of the party's household, whether there is a

continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with

one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Additionally, in this case since mother has relocated and wishes to remain in Brooksville, Florida, this court had to address Title 42 Pa.C.S.A. Section 5337(h) which sets forth the relocation factors as:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

The legislature has required that the court consider all of the Section 5328(a) best interest factors when "ordering any form of custody" and such consideration must be provided to the parties by the Court on either the record or in a written decision. *See* 23 Pa.C.S.A. §§5328(a) and (d). The Superior Court has provided the lower court with guidance regarding the Sections 5328(a) and (d) requirements and have determined that a court may not merely provide the parties with a recitation of the factors contained in the statute en masse; rather, the lower court

must place the reasoning for the determination of the factors in a written opinion. *See C.B. v. J.B.*, 65 A.3d 946, 950 (Pa. Super. 2013) and *J.R.M. v. J.E.A.*, 33 A.3d at 652. In *M.P. v. M.P.*, the Superior Court determined that the lower court erred where the court merely listed the Section 5328(a) factors but failed to apply them to the case at hand. 54 A.3d 950, 955-56 (Pa. Super. 2012).

A thorough review by the Superior Court will find that this court did not issue a mere recitation of the Section 5328(a) factors; rather, this court issued a lengthy and thorough final custody order in which the factors were applied to the facts, as determined by this court.

Appellant alleges that this court did not give due weight to the fact that she was the primary caretaker of minor child. The appellate courts are clear, that a lower court must give positive consideration to the parent who has been the primary caregiver." *Darning v. Balent/Kurdilla*, 19 A.3d at 1129 quoting *Collins v. Collins*, 897 A.2d 466, 473 (Pa. Super. 2006) (relying upon, *inter alia, Wiseman v. Wall*, 718 A.2d 844, 851 (Pa. Super. 1998) (stating that the determining factor in a custody determination may be one parent's role as primary caregiver)). The final custody order belies appellant's contention, and a review of the final custody order reveals that this court did give due weight to mother's role as primary caretaker to minor child in rendering a determination that the parties shall share joint physical custody of minor child. This court notes that at the time of the final custody order, minor child was not yet two years old, for the period of time prior to her birth the parties resided together and then continued to reside together until minor child was three or four months old. From the time mother left father's residence with minor

child, until the time that mother improperly moved to Florida and forcibly cut off father's period of physical custody, father enjoyed physical custody with minor child on alternating weekends. This court also notes that since the court has intervened, at father's behest, father has had physical custody of minor child for a consecutive three week rotating schedule.

Appellant also contends that that this court did not give due weight to the fact that father did not follow the temporary custody order issued by the master on March 17, 2014 and that father rarely requests to "face time" with minor child. This court finds it absurd that mother has requested the appellate court's to overturn the final custody order based upon father's noncompliance with the temporary custody order. This court did consider father's actions or lack thereof and concluded that it was financially and otherwise impossible for father to have complied with a temporary custody order which required him to fly to Florida, to get a hotel room and to provide all the meals for minor child based upon his part-time salary. This also determined that there was no fault in father's noncompliance with the custody provision of the temporary custody order, particularly where mother was the person who solely placed the burden on father's shoulders and inconvenienced father by her unilateral decision to relocate minor child to Florida without court or father's approval. Additionally, this court is unconcerned with father's minimal requests to "facetime" minor child. This court is unsure how father's limited "facetime" requests with a minor child who was barely one year old at the time mother improperly relocated to Florida and has just recently turned two years old is so devastating

to father that this court improperly weighed testimony and the custody factors in providing the parties with joint physical custody, should mother follow the final custody order and move back to Pennsylvania or upon determining that father should have primary physical custody if mother does not opt to relocate back to Pennsylvania.

Mother also contends that this court erred in determining that minor child had nosiblings per Section 5328(a)(6). This court has found no case law, nor has appellant provided this court with any case law, that Section 5328(a)(6) required the court to consider a party's unborn child as a sibling of minor child. A plain reading of the statute and case law suggests that the legislature was requesting that the lower courts consider an existing sibling relationship in rendering a determination of the best interests of the child for primary custody. If the legislature is requiring the courts to consider all unborn children of the parties in determining whether or not a sibling relationship exists, this court could be unduly burdened with parties alleging pregnancies in order to sway the custody factors in their favor.

Appellant alleges that this court improperly weighed the factors related to mother's improper and contested relocation to Florida. Appellant alleges that this court's characterization of mother "fleeing the state" improperly and weighted the factors towards father. Appellant contends that this court failed to consider that mother was moving to a residence with her fiancee and his grandmother. This court did not fail to consider mother's relocation to a residence that was procured by herself, her fiancee and his grandmother. To the contrary, this court repeatedly acknowledged mother's new residence. What

this court found issue with is that mother moved to Florida, without court approval, without the approval of father and without providing any testimony or evidence that mother tried and was unsuccessful in finding a residence or a job in Pennsylvania or even in the State of Delaware where appellant had lived and where her fiancee was also living at the time they moved to Florida.

While appellant focuses her appeal on is what the court failed to consider in denying her relocation, she fails to recognize what the court did consider, the fact that the move to Florida has significantly impacted and impaired the relationship between father and minor child and minor child with the extended family and *both* parties financial inability to provide father with suitable custodial arrangements. *See* Section 5337(h)(3). This court heard and considered the credible testimony that father's current financial, education and career status would negatively impact the quantity of time he would be able to spend with minor child if mother's relocation were permitted. Appellant fails to consider that the cost and expenses associated with minor child's transportation to and from Florida would render it nearly impossible for father to spend a significant amount of quality time with minor child if mother remained residing in Florida and that this court found that father candidly testified that he has thus far been able to afford minor child's transportation to and from Florida since July of 2014 as a result of the kindness of his family's financial assistance. Additionally, this court took into account, that in order for father to continue working, his sister, paternal Aunt is the person whom father relies on to pick up minor child for his custodial periods since the July 17, 2014. This court took into account that

paternal Aunt cannot continue in perpetuity to spend one day every few weeks flying to and from Florida to pick-up minor child for the periods of custody enjoyed by father. This court also heard testimony and carefully considered the evidence that it would not be feasible for father to have visitation with minor child in Florida, if mother is permitted to remain in Florida as father does not have the finances to pay for a the flights, hotels or food and social activities in Florida. Additionally, based on minor child's young age, father would not have the necessary equipment and accessories for young child if he was able to have partial physical custody of minor child in Florida.

This court recognized that the standard of review of the appellate courts is that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses' first-hand." *D.K. v. S.P.K.*, 2014 PA Super 218, 102 A.3d 467, 479 (2014) quoting *J.R.M. v. J.E.A.*, 33 A.3d at 650. A thorough review of the record by the Superior Court would enable the court to conclude that there is substantial evidence supporting the findings that this trial court as to each factor contained in Section 5328(a) and Section 337(h). Accordingly, because appellant is requesting that the Superior Court reweigh the evidence and has raised challenges to this court's findings of fact and credibility determinations regarding the parties as to findings that were supported by competent evidence of record the trial court's final custody order should not be disturbed and the final custody order should be affirmed. *See A.V. v. S.T.*, 2014 PA Super 48, 87 A.3d 818, 820 (2014); *M.E.V. v. F.P.W.*, 2014 PA Super 204, 100 A.3d 670, 675 (2014); *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super.

2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)); *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006). Moreover, a party cannot and should not dictate the amount of weight that a trial court places on evidence presented at trial. *R.M.G., Jr. v. F.M.G.*, 986 A.2d at 1237.

## CONCLUSION:

For all of the foregoing reasons, the trial court's order of December 19, 2014 should be affirmed.