J-A03011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.E.C., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.A.S. | : | No. 1566 MDA 2019 |

Appeal from the Order Entered August 28, 2019
In the Court of Common Pleas of York County Civil Division at No(s):
2018-FC-001498-03

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: APRIL 14, 2020**

K.A.S. (Mother) appeals from the trial court's order awarding primary physical custody of the two youngest of the parties' three children to J.E.C., Jr., (Father) subject to Mother's right to partial physical custody.  After careful review of the parties' briefs, relevant case law and the record on appeal, we conclude the Honorable N. Christopher Menges has properly disposed of Mother's issues on appeal, as set forth in his Pa.R.A.P. 1925(a) opinion. Therefore, we affirm the trial court's order based on Judge Menges' opinion.

Mother and Father are the parents of three (3) minor sons, W.C., born in November 2002 (age 17), N.C., born in November 2005 (age 14), and A.C., born in June 2008 (age 11).  The parties separated in 2014.  At that time, they resided in Maryland.

On June 2, 2017, the parties entered into a consent order in Maryland granting the parties shared legal custody and granting Mother primary

physical custody of all three children, subject to Father's partial custody rights. Mother relocated to York County, and the order was transferred to York County on or about July 25, 2018. In 2018, Father relocated to Alabama.[1]

On February 27, 2019, Father filed a "Petition for Modification and Relocation and Contempt." In his petition, Father sought primary physical custody of the parties' two younger children, N.C. and A.C., citing concerns pertaining to the children's education and Mother's inability to control the children and assure their school attendance.

Trial was held on August 16 and 21, 2019, during which both parties testified at length concerning the children's education, attendance records and steps taken to rectify any problems they were having in school. The court interviewed the three children during the course of the proceedings. All three children expressed a clear preference to remain in York County with Mother. N.T. Custody Trial, 8/16/19, at 122, 127, 145.

Both parties agree the oldest son, W.C., should remain in York County, as he is the expected valedictorian of his high school class. N.C. however, was diagnosed with ADD/ADHD and had various problems in the first year of middle school as well as with several teachers. N.C.'s school implemented a

---

[1] We note these the trial court's Rule 1925(a) opinion states Father relocated in 2016, which is a typographical error. At the hearing, Father testified that he moved in 2018.

504[2] plan, which helped, but it took the bulk of the school year to resolve the issues he had. Mother testified that N.C.'s difficulties had a trickle-down effect that caused A.C. to be late for school or the children would miss school altogether. Despite this, A.C. excelled academically and he was invited to participate in an advanced math program for the coming school year. *Id.* at 73. During the trial, W.C. testified that he believed his brothers should remain in Pennsylvania with Mother. *Id.* at 122. Father testified to receiving text messages, which Mother acknowledged, regarding N.C.'s violent behavior, which Mother could not handle. *Id.* at 58; N.T. Custody Trial, 8/21/19, at 80-81.

The court entered an order on August 28, 2019, awarding the parties joint legal custody. The order also awarded Father primary physical custody of the two younger children, N.C. and A.C., subject to Mother's rights of partial physical custody. W.C. remained in Mother's primary physical custody. Mother filed this appeal. Both Mother and the trial court have complied with Rule 1925.

---

[2] Section 504 of the Federal Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (1985), covers qualified students with disabilities who attend schools receiving federal financial assistance. To qualify for protection under Section 504, a student must be determined to: (1) have a physical or mental impairment that substantially limits one or more major life activities; or (2) have a record of such an impairment; or (3) be regarded as having such an impairment. Section 504 requires that school districts provide a free appropriate public education (FAPE) to qualified students in their jurisdictions who have a physical or mental impairment that substantially limits one or more major life activities.

On appeal, Mother raises the following issues for our consideration:

(1) The trial court erred as a matter of law and/or abused its discretion in separating the three (3) minor children in the absence of compelling circumstances warranting the separation of siblings, particularly as the three (3) children expressed a preference to remain in Mother's primary physical custody.

(2) The trial court erred as a matter of law and/or abused its discretion by awarding Father primary physical custody of the parties' two (2) youngest sons and in ignoring the long-established, continuing relationship and bond between Mother and the three (3) children as the primary custodial parent since the parties' separation.

(3) The trial court erred as a matter of law and/or abused its discretion in dismissing the clear preference expressed by the three (3) minor children to remain in Mother's primary physical custody and in failing to afford the children's preference the appropriate weight in its decision to separate the siblings and transfer custody of the parties' two (2) youngest sons to Father who resides in the [s]tate of Alabama.

(4) The trial court erred as a matter of law and/or abused its discretion in its analysis of the factors set forth in 23 Pa.C.S § 5328(a) (relating to custody factors) and 23 Pa.C.S. § 5337(h) (relating to relocation factors) and, therefore, erroneously determined that Father should have primary physical custody of the parties' two (2) youngest children and in granting Father's request for relocation to the [s]tate of Alabama.

Appellant's Brief, at 6.

This Court reviews a custody determination for an abuse of discretion. *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial

court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.*

> We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (citation omitted).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a) (1)-(16). In reaching its decision to award Father primary physical custody of the two younger children, the trial court analyzed each factor as it pertains to the circumstances of this case, and set forth his reasons why awarding Father primary physical custody of the two youngest children was necessary to promote the children's best interests and permanent welfare. Judge Menges carefully evaluated the custodial environments of each parent, and thoroughly considered which placement was

in the overall best interests of the two younger children, N.C. and A.C.  **See** Trial Court Opinion, 10/11/19, at 10-14 (court noted Father's testimony that the environment in Mother's home was "chaos,"  that Mother expressed concern about N.C.'s violent behavior toward her and her inability to manage him physically, that he "keeps locking me out of the house[,]" that lack of impulse control is part of N.C.'s ADHD and Mother has not been able to teach him impulse control, while Father has had no significant problems with him during his 8 weeks in summer; court also found particularly disconcerting Mother's failure to follow through on N.C.'s need for recommended therapy, including partial inpatient hospitalization; court stated in its analysis of factor six that it was "with great hesitance and pause" that it was separating the two younger kids from oldest brother, but noted the two younger boys were more bonded and the oldest was leaving for college in two years; court also found N.C.'s preference for staying with Mother was based on the "lax" environment, and, finally, court noted factor one (which party is more likely to encourage frequent and continuing contact with children and other party) and  factor eight (attempts to turn child against other parent), both weighed in favor of Father).

Judge Menges determined that awarding Father primary physical custody of N.C. and A.C., and allowing Mother to retain primary physical custody of W.C., was in the children's best interests.  We agree with the court's assessment that compelling circumstances existed in this case warranted separating the children.

We also agree with the court's determination that this was not a relocation, as neither parent was proposing to change their residence. **_See_** Trial Court Opinion, **_supra_** at 18. The parties were operating under a consent order, wherein Mother had primary physical custody of Child. The issue here was whether primary custody of two of the children should be changed from Mother to Father. **_Cf. D.K. v. S.P.K._**, 102 A.3d 467, 477-78 (Pa. Super. 2014) ("[A] custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not _per se_ trigger section 5337 of the Child Custody Act."). Rather, any relevant relocation factor not already incorporated by the court's consideration of the custody factors may be addressed under the catchall section 5328(a)(16) (any other relevant factor).

Judge Menges properly weighed the statutory custody factors and clearly articulated his considerations in making the custody award. The evidence of record supports his decision, and we do not find that his judgment was manifestly unreasonable or the product of partiality, prejudice, bias or ill will. **_In re K.D._**, **_supra_**. We find no error or abuse of discretion. **_J.R.M._**, **_supra_**. We rely upon Judge Menges's opinion to affirm the custody order, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/14/2020</u>

RECEIVED 10/11/2019 11:50AM 7178482777     BLAKE & SCHANBACHER
10/11/2019   11:48   York Co Prothonotary     717 771 4629       NO.327   #002

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
### FAMILY DIVISION

J██████ E. C██████████, JR.,
        Plaintiff

vs.

K█████ A. S██████,
        Defendant

No. 2018-FC-001498-03

Action in Custody

## MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

AND NOW, this 10th day of October, 2019, the Court is in receipt of Mother's

Notice of Appeal and Concise Statement of Errors Complained of Pursuant to Rule of

Appellate Procedure 1925(b) filed on September 26, 2019. The Court hereby reaffirms

its Order entered on August 28, 2019.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, J█████ E. C███████, Jr.,.("Father") and Defendant, K█████ A. S██

("Mother"), are the natural parents of W████ C███████, born November ██ 2002

("W.C."), N██████ C██████, born November ██, 2005 ("N.C."), and A█████

C███████ born June ██, 2008 ("A.C.").

The parties separated in spring of 2014. A stipulated order for custody was

entered by the parties on June 2, 2017 in Baltimore County, Maryland (transferred to

York County, Pennsylvania on or about July 25, 2018), and provided that Mother had

1

primary physical custody of the children, subject to Father's rights of partial physical custody on alternating weekends and extended periods of time over the summer. Father moved to Alabama in 2016 and Mother moved to York County, Pennsylvania in 2018.

On or about February 27, 2019, Father filed a Petition for Modification, Relocation and Contempt. An Interim Order for Custody, Pending Trial was entered on April 2, 2019, which provided the parties with shared legal custody of the children, and Mother with primary physical custody, subject to Father's rights of partial physical custody of N.C. and A.C. from June 10, 2019 through August 4, 2019, and custody of W.C. from July 21, 2019 through August 4, 2019.

A custody trial was held on August 16, 2019 and August 21, 2019. As a result of the custody trial, the Order subject of this appeal was entered on August 28, 2019. The said Order provided the parties with shared legal custody of the children and Father with primary physical custody of the parties' two (2) youngest children, N.C. and A.C., and granted Father's request for relocation to Alabama. The parties agreed that the oldest child, W.C., soon would be 17 years old and was going to stay in Mother's primary physical custody in Pennsylvania.

It is undisputed by the parties, and the evidence supports a finding that the parties' oldest child, W.C., is doing well in Mother's primary physical custody. In fact, he is ranked 1 out of 284 in his class. Hr'g Tr., August 21, 2019 at 5. During the in-camera interview with W.C., he stated he understood that he would be staying in Mother's

2

primary custody and wanted his brothers to remain in Mother's primary custody as well. In fact, all three (3) of the children expressed a desire to stay in Mother's primary physical custody. When asked by the Court how he felt his brothers moving to Alabama would impact their relationship with one another, W.C. responded that he believed that it would have a negative impact on their sibling bond. Hr'g Tr., August 16, 2019 at 122. When speaking about his younger brothers, N.C. specifically, W.C. described him as "just a difficult sort of kid." *Id.* at 116. Following the in-camera interview with W.C., the Court interviewed N.C. who admitted that he had difficulty with school this past school year. He stated that the difficulties were caused by "disagreements" and a "conflict of interests" with his teachers, specifically his science teacher and math teacher, due to his ADHD. *Id.* at 127-128. Lastly, in-camera the Court interviewed the youngest child, A.C. Like his older brothers, he echoed the desire to stay in Mother's primary physical custody. He further stated to the Court that N.C. had difficulty waking up for school in the morning because, he stayed up until sometimes 3:00 a.m. playing video games or watching movies. *Id.* at 144.

The parties both testified that N.C. ended the school year with a cumulative GPA of 81.5 and passed to the 8th grade; and that A.C. had been accepted into an accelerated math program and passed to the 5th grade. The parties also agreed that N.C.'s academic and attendance issues were worse than the previous school. Father testified that in October of 2018, the Truancy Officer for Spring Grove School District contacted him

3

because A.C. had missed almost a week of school and N.C. had numerous unexcused/unlawful absences from school. *Id.* at 14. The progress report for first marking period for A.C. indicated that he had a total of 13 absences (9 excused, 4 unexcused/unlawful) and 3 tardies. *Id.* at 15. A.C.'s teacher noted on the progress report that there were numerous missed homework assignments. *Id.* at 16. A.C.'s progress report for the final marking period indicated that A.C.'s total absences were 18.5 (12.5 excused, 6 unexcused/unlawful) and 12 tardies. *Id.* With respect to N.C., his progress report for the second marking period indicated he had 3 excused absences, 5 unexcused/unlawful absences, and 3 tardies. *Id.* at 17. It was noted on N.C.'s second marking period progress report that he was capable of doing better quality work than what he was generating, homework was not being completed, and he was having behavioral problems. *Id.* Father testified that N.C. was eventually cited for violating the school's compulsory attendance policy. *Id.* at 21. Additionally, during his testimony, Father described the environment at Mother's house as being "chaos". *Id.* at 22. Father stated that he has received numerous texts and e-mails from Mother saying that she could not get N.C. up in the morning to go to school. *Id.* Father further stated that Mother has expressed concerns to him regarding N.C.'s violent behavior towards Mother, and that N.C. was getting too big for her to manage him physically. *Id.* at 57. The youngest children, N.C. and A.C. spent the majority of the summer with Father in Alabama. During that time, Father testified that he had no problems getting the children up and to

4

day camp during the week while he was at work. *Id.* at 30-31. Additionally, Father made sure that A.C. read for at least 15 minutes most nights and logged his reading progress. *Id.* at 45. It is noted that Mother in her testimony raised concerns that according to A.C.'s reading log, the number of pages being read each entry seemed low in her opinion. Hr'g Tr., August 21, 2019 at 7-8.

Mother testified that she lost her job in late October of 2018 due to frequently being late. *Id.* at 86. Mother stated that while she was looking for employment, at the time of the custody trial, her only source of income was child support, alimony, and a portion of Father's military pension. *Id.* at 37. Additionally, in October of 2018, N.C. was taken to crisis care. *Id.* at 49. It was recommended at crisis that N.C. be partially hospitalized, or as an alternative, receive intensive outpatient therapy. *Id.* at 55. As of the date of the hearing, N.C. had only attended five (5) therapy sessions, because there was not access to any additional services. *Id.* at 56. With respect to N.C.'s treatment, Mother stated "I could have taken him to York Hospital and I could have told them that he was having severe emotional distress and issues and they would have put him in on a psychiatric hold so he would have gotten additional services. I didn't feel like it was appropriate to do that." *Id.* Further, Mother testified that N.C. was on a waiting list for months to see a psychiatrist or counselor. *Id.* at 57. Mother stated that it was recommended that N.C. do a partial day program, but the only programs that would take the child's insurance were in Hershey and Baltimore. *Id.* Mother stated it was not

5

feasible for her to drive him there and pick him up everyday, because she was working. *Id.*

Regarding the issues that N.C. was having in school, Mother described the science teacher's behavior towards N.C. as "egregious." *Id.* at 59. Mother testified as to several meetings with N.C.'s teachers, and she felt like "they were ganging up on him and blaming him for his learning disability." *Id.* at 71.

The Court was presented with evidence of N.C.'s behavioral problems in Mother's home.

| | |
|---|---|
| "THE COURT: | Ma'am, I have a question. That same exhibit Q, the page after Attorney Hunter just referred to, I see where I think you texted '[N.C.] is getting out of control with his behavior because I won't let him go to a friend's house or give his computer back because he's grounded. He keeps locking me out of the house. Slamming doors and other objects, throwing things and using extremely crude language.' Was that April 26th, 2019? |
| THE WITNESS: | Probably. |
| THE COURT: | So he went to crisis in October of 2018, 6 months later this was still that bad. |
| THE WITNESS: | That was, believe it or not somewhat of an improvement. |
| THE COURT: | He's locking you out of the house. |
| THE WITNESS: | Yeah. He has a hair trigger. If he gets mad about something, he blows up like that and then usually within about 20 minutes he calms down and 99.9 percent of the time he will actually be the one to |

6

come to me and apologize for his behavior. He's definitely remorseful and understands that his behavior is inappropriate. But I am told that impulse safety is part of the ADHD and that he just blows up and takes him longer to get control over his emotions and his behavior than other people.

THE COURT:          Okay. Go ahead."

*Id.* at 80-81.

Mother testified that in May of 2019, she began researching residential treatment programs for N.C. due to his behavioral problems at home and that she discussed this treatment option with Father. *Id.* at 62. Additionally, Mother testified as to other remedial steps she was taking to correct some of the behavioral problems that N.C. was displaying, such as a consultation with a learning center for academic support services; and applying a more restrictive setting to the children's electronic devices. *Id.* at 9, 74-75.

## ISSUES ON APPEAL

On September 26, 2019, Mother filed her Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(b), which provided the following:

1. *The trial court erred as a matter of law and/or abused its discretion in separating the parties' three (3) minor children in the absence of compelling circumstances warranting the separation of siblings, particularly as the three (3) children expressed a preference to remain together in Mother's primary physical custody.*

2. *The trial court erred as a matter of law and/or abused its discretion by awarding Father primary physical custody of the parties' two (2)*

7

*youngest sons and in ignoring the long-established, continuing
relationship and bond between Mother and the three (3) children as
the primary custodial parent since the parties' separation.*

3.  *The trial court erred as a matter of law and/or abused its discretion in
dismissing the clear preference expressed by the three (3) minor
children to remain in Mother's primary physical custody and in failing
to afford the children's preference in appropriate weight in its
discretion to separate the siblings and transfer custody of the parties'
two (2) youngest sons to Father who resides in the State of Alabama.*

4.  *The trial court erred as a matter of law and/or abused its discretion in
its analysis of the factors set forth in 23 Pa. C.S. §5328(a) (relating to
the custody factors) and 23 Pa. C.S. §5337(h) (relating to the
relocation factors) and, therefore, erroneously determined that Father
should have primary physical custody of the parties' two (2) youngest
children and in granting Father's request for relocation to the State of
Alabama.*

## DISCUSSION

An abuse of discretion is more than just an error in judgment and, on appeal, the

trial court will not be found to have abused its discretion unless the record discloses that

the judgment exercised was manifestly unreasonable, or the results of partiality,

prejudice, bias or ill-will. *Baysmore v. Brownstein*, 771 A.2d 54, 57 (Pa. Super. 2001)

(internal citations omitted).

An appellate court has broad review in custody cases, and thus, is not bound by

the deductions or inferences made by a trial court from the facts found, nor must the

appellate court accept a finding of fact for which there is no competent evidence to

support it. *Pilon v. Pilon*, 492 A.2d. 59, 59-60 (Pa. Super. 1985). However, this broad

8

scope of review by the appellate court was never intended to nullify the fact finding
function of the trial court. *Id.*

> 1. *The trial court erred as a matter of law and/or abused its discretion
>    in separating the parties' three (3) minor children in the absence of
>    compelling circumstances warranting the separation of siblings,
>    particularly as the three (3) children expressed a preference to
>    remain together in Mother's primary physical custody.*

It is denied that the Court erred as a matter of law and/or abused its discretion in
separating the parties' three (3) minor children. It is further denied that there was an
absence of compelling circumstances warranting the separation of the children.

"[T]he cardinal concern in all custody matters is the best interest and permanent
welfare of the child, in this case, children. It has always been a strong policy in our law
that in the absence of compelling reasons to the contrary, siblings should be raised
together whenever possible." *Id.* at 60. "The requirement of a showing of 'compelling
reasons' might appear synonymous with the 'clear necessity' requirement of the Juvenile
Act...If one is 'compelled' to do something, it might be said that [it] is 'necessary' to do
it. Moreover, the term "compelling' is defined as 'tending to convince or convert by or
as if by forcefulness of evidence.' " *Id.* The question then becomes whether it was
necessary to separate the children and whether the evidence was forceful in that regard.
*Id.*

The Court's decision to grant Father primary physical custody of the parties' two
(2) youngest children, N.C. and A.C., was necessary to promote the best interest and

9

permanent welfare of those particular children, because evidence was presented at the custody trial indicating that Mother could not control the parties' middle child, N.C., and the educational, mental/emotional, and physical needs of the parties' two (2) youngest children were not being satisfied in Mother's care. The Court stated its findings and reasons for believing that the best interest and permanent welfare of the children would be promoted by the Order of August 28, 2019 in open court, on the record, pursuant to the custody statute at §5328, as follows:

> "The first factor is which party is more likely to encourage and permit frequent and continuing contact between the children and the other party. We find this factor in favor of father since it is clear that mother has…engaged in a pattern of not encouraging the children to have a good and healthy relationship with the father.

> The second factor is present or past abuse and there was a stipulation that there had been no abuse. So that is not a factor.

> Factor 2.1 is involvement with protective services and there was no evidence of that and therefore that is not a factor.

> Factor three, the parental duties performed by each party on behalf of the child. This is at best a mixed bag. Father has not for three years or maybe not quite that long, has not for at least the last year or two had the children during school time and mother has. However, the parental duties go beyond nurturing children and providing for them and making sure they get to where they need to go and so forth. Parental duties also refers to some sense of discipline and fostering and teaching children self-control. Quite candidly mother has done a poor job of that. There is at least one text or e-mail we saw in the exhibits that we looked at on Friday in which mother conceded that her house was chaos. We saw a text today where in April just a few months or so ago mother was texting father that Nate is out of control and is locking her out of her own home. Mother provides many excuses for why this is

10

going on and that she has done her best and of course the Court believes that on some level she has done her best. But the Court believes mother is incapable of providing the discipline these children need. The Court was very troubled at today's testimony where mother tried to explain away the text in April 2019 where Nate was destroying furniture and locking her out of the home and she gave as reason for that Nate's impulse safety which is a part of his ADHD. Impulse safety is why many murders happen. Part of a child growing up is to learn to control his or her impulses. It was not a 5, 7 or 10-year-old. This is a 13-year-old and the Court is most troubled that mother has not been able to teach this child any impulse safety control. We heard from father and father's fiancé that father had no substantial problems with Nate in the eight weeks he had him this past summer. The Court is also most troubled by mother's having the child go to crisis as an intervention in October of 2018 but could not get the child to any therapy in spite of the fact that partial hospitalization was the recommendation, mother could not get the child to any therapy for almost six months-- four months really. At any rate, she gave the Court all kinds of reasons and excuses including but not limited to the lack of insurance coverage. Maybe the Court is old fashion but if my child or grandchild had to go to crisis and partial hospitalization was recommended, I would find some way to pay for that out of my pocket regardless of insurance coverage. We just find mother's lack of getting this child to any therapy unbelievable. That is unfortunately reinforced by the fact that we looked at the April 2019 text by mother where the same child Nate was locking her out of her house and although therapy had started by then according to mother's testimony, she also testified there has only been five sessions from February 2019 to the present in August of 2019. In any event, the parental duties in one sense have been performed well by mother, in another sense are sorely lacking and need a different parent to perform those duties and therefore we find this factor heavily in favor of father.

Factor four, stability and continuity in the children's education, family life, and community life. Both parties had really exhibited a fairly high degree of stability. Father had some instability over the last several years as to where he lived but

11

mother just lost her job and her ability to support herself seems a bit suspect. In any event, we find that a neutral factor.

Factor five, the availability of extended family. Unfortunately, the Court even has to find this factor in favor of father. Mother's mother and brother and family live in Georgia and father arranged for the children to visit with their family in Georgia during his time of custody. That tells the Court that the father values not only his extended family but mother's extended family highly and enough to take some of his time of his summer custody schedule to make sure these children see mother's family in Georgia.

Factor number six is the children's sibling relationships. This is another tricky factor. The Court is fully cognizant of the fact that the court is separating these two children from their oldest brother [W.C.]. It is with great hesitance and pause that the Court does that. But it is very obvious that [W.C.] will be going to college in not only two years, about a year and three-quarters and therefore that will get severed somewhat then any way. The Court is counting on the parents to try to do everything they can so that [W.C.] and his brothers spends some time with each other on the summer vacation and with the family on some of the breaks. In any event, the Court did find that [N.C.] and [A.C.] are closer in age and closer bonded than the two younger children are with [W.C.]. Again, [W.C.] is a completely different kind of child. He's a nerd. He's number one in his class. He's very studious, has concrete plans for the future. And this does set him apart somewhat from the other two younger children.

Factor seven, the well-reasoned preference of the children. Again, is with great pause. This Court is ordering a schedule that is contrary to the children's stated preference. All three children stated they wanted to stay in Pennsylvania with mother. Of course [W.C.'s] preference is really irrelevant. [N.C.'s] preference the Court finds is primarily because he enjoys mother's very lax and lenient life and enabling [N.C.] to do pretty much whatever he wants. Interestingly, [A.C.] did express a preference to stay with his mother in Pennsylvania but did not appear it was a big deal if it was to go the other way. [A.C.] seemed flexible and the extreme

12

circumstances of [N.C.'s] problems not only in the school but his behavior problems are so extreme that we have to order a schedule that is contrary to the children's preferences and therefore this factor is in effect neutral.

Factor number eight, the attempts of a parent to turn the child against the other parent. As we stated in factor number one, mother seems to have engaged in a very subtle and tacit attempt to have the children not have as good relationship with their father as they should and therefore this is also a factor in favor of father.

Factor number nine is which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children, adequately for the children's emotional needs. Candidly but for the last several words of that factor we would find that probably slightly in favor of mother. Again mother has done some things very well. But [not] adequate for the children's emotional needs. Emotional needs take in a lot of things including behavior and mother has not maintained the proper home and rules and discipline for the children's emotional needs and therefore this factor actually has to lean towards father.

Factor number ten is which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children. We're going to call that a neutral factor. Mother again has done some things very well. But father seems to be able to take excellent care of these children during the summer and therefore it is a neutral factor.

Factor number 11, the proximity of the residences of the parties was stipulated to I think if I remember correctly it was 924 miles. Which will necessitate probably a lot of the going back and forth to be by air but it also can be driven in a 2-day Drive. In any event, it's a factor but it doesn't lean towards mother or towards father.

Factor 12, each parties availability to care for the children and make appropriate child care arrangements. Both parties have been able to do that just fine and that's a neutral factor.

13

Factor 13, level of conflict between the parties. And the willingness and ability of the parties to cooperate with each other. The Court has read the exhibits, the e-mails and texts and while a few of fathers communications were not as friendly as they should have been, there were times when mother didn't even bother to respond to some of father's communications. Mother seems to have many excuses for why the communications between mother and father are so poor. And again we cannot say father is without fault but a lot of the problems with the communications seem to be on the part of mother. Therefore, this is a factor in favor of father.

14th and 15th factor, drug and alcohol abuse and mental and physical condition, we [have] a stipulations that those are not issues and therefore they are not factors.

16 any other relevant factor. Again, we've dealt with all the factors and therefore that is not a factor."

Hr'g Tr., August 21, 2019 at 111-118.

The Court believes that the record speaks for itself, and that the Court's decision to award Father primary physical custody of the two (2) youngest children was necessary to promote the best interests and permanent welfare of the children. However, the Court would like to add that while the Court did consider Mother's unemployment in factor four, the stability and continuity in the children's education, family life, and community life to be a neutral factor between the parties, the Court did hear testimony that Mother lost her employment due to frequent tardiness to work caused by Mother's inability to get the children to school on time. Thus, the Court did not erred as a matter of law and/or abused its discretion in separating the parties' three (3) minor children, because evidence was presented at the custody trial indicating that compelling

14

circumstances existed in this case which warranted separating the children, and the decision was not manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will.

> 2. *The trial court erred as a matter of law and/or abused its discretion by awarding Father primary physical custody of the parties' two (2) youngest sons and in ignoring the long-established, continuing relationship and bond between Mother and the three (3) children as the primary custodial parent since the parties' separation.*

It is denied that the Court erred as a matter of law and/or abused its discretion by awarding Father primary physical custody of the parties' two (2) youngest children and ignoring the long-established, continuing relationship and bond between Mother and the three (3) children as primary custodial parent since the parties' separation.

To the contrary, as stated above in the Court's recitation of the custody factors pursuant to §5328, Mother has done some things very well with respect to her care of the children. The Court acknowledges that the parties' oldest child, W.C. has done and continues to do very well in Mother's primary physical custody. The Court does not ignore or deny that there is a bond between the three (3) children and between the children and Mother. However, not all bonds are healthy bonds. Specifically, as stated in factor seven (7) the well-reasoned preference of the child, the Court found that N.C.'s reference to stay with Mother was based on the lax environment at Mother's house and that N.C. was free to do pretty much whatever he wanted, and he does, as demonstrated by him locking Mother out of her own house and breaking various objects in the house.

15

N.C. seems to place blame on others for his actions, like doing poorly in school. Mother likewise shifts blame from N.C. to any bystander nearby. Mother's inability to hold N.C. responsible for his conduct and protecting him from the consequences of his conduct by blaming others is not healthy. Additionally, the parties' oldest child, W.C. will most likely be going off to college after high school, and the children would he have to transition to being separated at that time as well. The Court also observed, as stated in the recitation of the custody factors, that when interviewing the children, N.C. and A.C. appeared to have a closer bond with each other than they did with W.C. While the Court is hesitant to separate siblings, given the facts of this case, the Court believes that it is appropriate.

Therefore, the Court did not erred as a matter of law and/or abused its discretion by awarding Father primary physical custody of the parties' two (2) youngest children, and the Court did not ignoring the long-established, continuing relationship and bond between Mother and the three (3) children, because the decision to separate the three (3) children was supposed by the evidence presented at trial and not the result of unreasonableness, or partiality, prejudice, bias or ill-will on the part of the Court.

3. *The trial court erred as a matter of law and/or abused its discretion in dismissing the clear preference expressed by the three (3) minor children to remain in Mother's primary physical custody and in failing to afford the children's preference in appropriate weight in its discretion to separate the siblings and transfer custody of the parties' two (2) youngest sons to Father who resides in the State of Alabama.*

16

It is denied that the Court erred as a matter of law and/or abused its discretion in dismissing the clear preference expressed by the three (3) minor children to remain in Mother's primary custody and it is further denied that the Court failed to afford the children's preference the appropriate weight in its discretion to separate the siblings. Factor seven (7), the well-reasoned preference of the child pursuant to §5328 means plainly what it states: the *well-reasoned* preference of the child. While the Court believes that W.C., the parties' oldest child's reasons for wanting to stay in Mother's primary physical custody and not be separated from his brothers is well-reasoned, W.C. did tell the Court that N.C. was a "difficult sort of kid." Hr'g Tr., August 16, 2019 at 116. Moreover, since W.C.'s custodial position was not changing, his preference has little to no weight in the overall evaluation of the children's preference. As previously stated above, N.C.'s preference to stay with Mother the Court did not believe was well-reasoned, but rather based on the fact that Mother could not control him and allowed him to do whatever he pleased at Mother's home. Finally, the Court found A.C.'s preference to be somewhat passive. A.C. expressed a desire to stay in Mother's primary physical care, but could have easily transitioned to Father's home as well. Thus, the Court did not erred as a matter of law and/or abused its discretion in dismissing the clear preference expressed by the three (3) minor children to remain in Mother's primary custody, because the children's preferences were not *well-reasoned* and the Court gave the children's preference the appropriate weight it deserved in weighing the custody factors.

17

4. *The trial court erred as a matter of law and/or abused its discretion in its analysis of the factors set forth in 23 Pa. C.S. §5328(a) (relating to the custody factors) and 23 Pa. C.S. §5337(h) (relating to the relocation factors) and, therefore, erroneously determined that Father should have primary physical custody of the parties' two (2) youngest children and in granting Father's request for relocation to the State of Alabama.*

It is denied that the Court erred as a matter of law and/or abused its discretion in its analysis of the factors set forth in 23 Pa. C.S. §5328(a) and 23 Pa. C.S. §5337(h). The Court presents that the evidence and testimony presented at the custody trial adequately provided the basis for the analysis of the custody factors set forth in 23 Pa. C.S. §5328(a). Such evidence and testimony can be found in their entirety in the custody record regarding this matter. Additionally, the Court stated at the custody trial that it did not consider relocation to be applicable to this case, because "we do not have a parent relocating. I'm relocating the children." Hr'g Tr., August 21, 2019 at 111. Neither party objected at the time of the custody trial to the relocation factors not being addressed, nor had either party objected to the issue of whether or not a relocation had even occurred. Therefore, the Court did not err as a matter of law and/or abused its discretion in its analysis of the factors set forth in 23 Pa. C.S. §5328(a) and 23 Pa. C.S. §5337(h), because the evidence and testimony presented at the custody trial set forth the basis for the Court's analysis of the custody factors under §5328(a), and the relocation factors under §5337(h) were not applicable in this matter.

18

## CONCLUSION

After review of the record and for the foregoing reasons, the Court hereby reaffirms its Order entered on August 28, 2019.

BY THE COURT,

_____
N. CHRISTOPHER MENGES, JUDGE

19