J-S67015-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| L.A.D., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| E.J.A., | : | |
| | : | |
| Appellee | : | No. 1042 WDA 2014 |

Appeal from the Order entered May 30, 2014,
Court of Common Pleas, Erie County,
Civil Division at No. 14723-2004

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED NOVEMBER 10, 2014**

L.A.D. ("Mother") appeals *pro se* from the May 30, 2014 order entered by the Erie County Court of Common Pleas denying her request to modify the custody order pertaining to D.A., born in October of 2004 ("Child"), applicable to Mother and E.J.A. ("Father").  After careful review, we affirm.

The trial court provided the following summary of the procedural history of this case:

> Since the 2004 initiation of this case, the Court has entered eight custody orders. Prior to the Child reaching school age, the parties maintained essentially an equal shared custody arrangement. Thereafter, an August 11, 2010 Order of Court set forth the parties consent agreement. Pursuant to the August 11, 2010 order, the parties alternated time in the summer, but[] during the school year, the Child was in Father's custody overnight during the week, one full weekend per month and one weekend overnight during another weekend of the month

*Former Justice specially assigned to the Superior Court.

while Mother exercised custody two evenings per week pus the remaining weekend time.

Since 2010, the parties have filed a petition for modification each year. The three most recent petitions resulted in full custody trials before the court. Specifically, on July 27, 2011, Mother filed a Complaint for Modification of Custody Order requesting primary custody and alleging that she could best meet the developmental needs of the Child. Following a hearing, the Honorable Daniel J. Brabender, Jr. issued a December 12, 2011 Order maintaining a shared legal and physical custody arrangement for the parties. The December 12, 2011 Order established a schedule which maintained the weekend schedule from the parties 2010 consent agreement but altered weekdays such that Mother obtained one overnight period of custody during the week in addition to one evening period of custody.

Just four months later, on April 20, 2012, Mother filed another Complaint for Primary Residence/Modification of an Existing Order alleging that it would serve the Child's best interest to be in her primary custody due to continued lack of communication with Father and Mother's residence is permanently in the Child's school district.[FN] Following a hearing, Judge Brabender issued a September 13, 2012 Memorandum Opinion and Order maintaining the status quo. Mother appealed Judge Brabender's Order. By a June 19, 2013 Memorandum Opinion, the Superior Court affirmed the September 13, 2012 Order.

[Two months later], on August 26, 2013, Mother filed a Complaint for Primary Residence/Modification of an Existing Order alleging the Child's best interest would be served in her primary custody due to continued lack of communication with Father, Mother's residence in the Child's school district, Mother's availability, and use of the Child for financial purposes. After a May 28, 2014 hearing, this Court issued its May 30, 2014 Order which, with

- 2 -

regard to periods of custody, only altered the weekend custody schedule. Specifically, during the school year, each party has custody of the Child every other weekend. The only other substantive changes to the order were the addition of a provision that each party attend individual counselling and that, until further order of court, neither party file a custody modification or contempt petition without first seeking leave of court. Mother, on June 27, 2014, filed her Notice of Appeal.

_____

[FN] Mother, on April 30, 2012, also filed a Petition for Contempt of Custody Order alleging that Father did not allow her period of custody on April 28, 2012. Following a hearing, the Petition for Contempt was denied.

Trial Court Opinion, 6/28/14, at 1-3 (footnote in the original).

Mother raises the following issues for our review, recited verbatim and without correction from the statement of questions involved section of her appellate brief:

1. DID THE COURT ERR BY PREJUDICED BY THE COURT'S SPECIFIC ACTIONS?

a. DID THE COURT ERR IN DETERMINING THAT THE PLAINTIFF'S CLAIM WAS WITHOUT MERIT IN SEEKING PRIMARY RESIDENCY?

b. DID THE COURT ERR TO NOT HEAR TESTIMONY FROM PLAINTIFF'S WITNESSES AND TAKE CONSIDERATION THE PRETRIAL NARRATIVE WAS CIRCUITED MORE THAN ONCE IN A TIMELY MANNER?

c. DID THE COURT ERR TO MODIFY AND MEND SOME OF THE SHARED HOLIDAY TIME FOR A MORE STABILITY AND LESS MOBILE OF OUR CHILD?

d. DID THE COURT ERR IN MENDING THE CURRENT COURT ORDER TO REMOVAL OF FAMILY WIZARD AND CO= PARENTING?

e. DID THE COURT ERR IN AND ABUSE DISCRETION TO RECEIVE EXHIBITS AT THE TRIAL, dated for May 28th, 2014?

f. DID THE COURT ERR IN ADDRESSING THE COMMUNICATION FROM PAGE 2 LINE I OF CURRENT CUSTODY ORDER?

g. DID THE COURT ERR WITH AN ADDITION OF PAGE 3 NUMBER 7 OF COURT ORDER- UNTIL FURTHER ORDER OF COURT: NEITHER PARTY SHALL FILL A CUSTODY MODIFICATION OR CONTEMPT PETITION WITHOUT FIRST SEEKING LEAVE OF COURT TO DO SO?

2. The Court erred with acknowledgement in consideration of the different factors for the decision based on the best interest of the child's moral, mental, emotional, physical and spiritual development.

a. Did the Court err with withdrawing the suspicion of drug use around the child and dismiss the drug testing to help hold the child's wellbeing accountable?

b. DID THE COURT ERR IN THAT PLAINTIFF BROUGHT FORTH IN THE SAID HEARING AND UTILIZED SEVERAL ATTEMPTS THROUGH CO-PARENTING, CONCERN IN OUR CHILD'S SCHOOL AND OUT OF SCHOOL ACTIVITIES OF DECISIONS THAT NEEDED TO BE ADDRESSED AND PROCEED TO NOT BE FULFILLED FOR THE CHILD[?] IN TURN GOES IN HAND OF PA.C.S.A. 5328(A)(4)[.]

c. DID THE COURT ERR UPON RECEIPT OF THE CURRENT CUSTODY ORDER, THE PLAINTIFF HAS BEEN CONTACTED BY THE CHILD'S 3rd GRADE

- 4 -

> SCHOOL TEACHER STATING THAT THE CHILD IS
> STILL BEHIND IN A GRADE LEVEL OF READING[?]
>
> > i. DID THE COURT ERR IN KNOWING THE LACK
> > OF COMMUNICATION AND THE DIFFICULTY OF
> > DECISIONS BETWEEN BOTH PARTIES OF THE
> > CHILD CONTINUES TO BE NOT ADDRESSED
> > FOR THE BEST INTEREST OF THE CHILD AND
> > THE NEEDS OF OUR CHILD AFTER THERE HAVE
> > BEEN MORE THAN SEVERAL ATTEMPTS TO BE
> > ADDRESSED UTILIZING DIFFERENT METHODS
> > FOR A SOLUTION FOR THE SAKE OF OUR
> > CHILD.
>
> > 3. DID THE COURT ABUSE IT'S DISCRETION IN
> > MAKING A NON SUBSTANTIVELY MODIFY TO THE
> > CUSTODY ORDER WITHOUT HOLDING THE
> > EVIDENTIARY PROCEEDING?

Mother's Brief at 6-7.[1]

In total, Mother raises 14 questions for this Court to address. Her argument section of her appellate brief, however, is less than one-half of a page, includes no citations to the record, and does not include any discussion about any of the issues raised.[2] As we have previously stated,

---

[1] Mother did not paginate her appellate brief. For ease of reference, we assigned page numbers beginning with the first page after the cover.

[2] We note, however, that Mother appears to have abided much of the information we included in the Memorandum deciding her last appeal. In the *pro se* appellate brief Mother filed in that appeal, she failed to include a statement of questions involved, a summary of her argument, or citation to any relevant legal authority. ***See L.A.D. v. E.J.A.***, 1585 WDA 2012, *5 (Pa. Super. June 19, 2013) (unpublished memorandum). She has remedied those deficiencies in large part in her brief in support of the current appeal.

We further note that Mother included an additional section in her appellate brief entitled "Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence," wherein she restates the issues raised

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014) (internal citations omitted); ***see also*** Pa.R.A.P. 2119(a) (requiring that the argument "be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"), (b) (requiring citations to relevant authority and including the principle for which they are cited), (c) (requiring citations to the record), (d) (requiring a synopsis of all the evidence on point relating to a claim that the trial court erred by finding or refusing to find a fact).

Generously reviewing Mother's argument, we find that she preserved only one question, encompassed in issues (1)(a) and (2) stated above – whether the trial court abused its discretion by denying her petition for modification of the custody order and its application of the custody factors

---

in the statement of questions involved section of her brief and provides a sentence or two explaining the reason she raised each issue. ***See*** Mother's Brief at 13-16. Although we appreciate Mother's attempt to be thorough, this section is only required (and applicable) in cases wherein a defendant challenges the discretionary aspects of his criminal sentence on appeal. ***See*** Pa.R.A.P. 2119(f).

contained in section 5328(a) of the Child Custody Act. **See** Mother's Brief at

17. We begin by stating our standard of review:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

**J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa. Super. 2011) (citation omitted).

Section 5328(a) of the Child Custody Act sets forth the factors that a

trial court must consider when ordering any form of custody, giving greater

weight to factors affecting the safety of the child:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide

adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of

unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

The trial court found that factor 2 (present or past abuse), factor 2.1 (involvement with child protective services), and factor 6 (sibling relationships) were not relevant in this case.[3] Trial Court Opinion, 7/28/14, at 4. Furthermore, the trial court stated that because the court had so recently reviewed the case at the modification proceeding the previous year, it limited testimony to "new information since the [c]ourt's last involvement with the parties," to which no objection was made by either party. *Id.* As the parties presented no evidence regarding factors 3 (the parental duties performed by each party), 5 (availability of extended family), or 11 (proximity of the parties' residences), the trial court made no new findings with respect to these issues. *Id.* at 4-5. The trial court found that the remaining factors weighed in favor of maintaining the status quo. There was no concern regarding most of the factors, as both encouraged contact with

---

[3] Our review of the record reveals that Child has two teenaged half-siblings on Father's side with whom, according to Father, Child has a close relationship. *See* N.T., 5/28/14, at 33-34. This omission does not alter our decision.

the other parent; Child had improved his academic performance; testimony revealed that Child was happy with the custody arrangement; neither made attempts to turn Child against the other parent; both maintain a stable and loving environment for Child; and there are no concerns about the mental or physical conditions of either parent. *Id.* at 5-9. Although Mother was reporting troubling behaviors by Child while he was in her care, including aggressiveness and suicidal talk, Father had not observed the same behaviors, and found that Child is able to deal with frustration better than before. *Id.* at 5-6.

The trial court observed a high level of conflict between Mother and Father, aggravated by the nearly continuous involvement of the courts, and believes that neither Mother nor Father appreciate the detrimental impact this is having on Child. *Id.* at 6-7. Mother has brought serial petitions for modification of the custody order, concomitantly missing half of the scheduled co-parenting sessions, raising questions in the trial court's mind regarding Mother's commitment to co-parenting Child with Father. *Id.* at 8. Furthermore, the trial court found that "since the last custody order, Mother has relinquished to Father thirteen overnights of her periods of custody, plus sixty hours of daytime custody," which cast doubt about Mother's ability to care for Child or make appropriate arrangements for Child's care. *Id.* at 7.

Ultimately, the trial court concluded that modifying the custody order to make Mother the primary custodian of Child was not in Child's best

interest. It found the evidence supported finding that Child was happy and settled in the established custody routine and actually exhibited better behaviors in Father's care than in Mother's care. *Id.* at 7. The trial court further granted Father's request to alternate weekends of custody with Mother,[4] finding that because

> this is only a minor change to the custody schedule and that the Child does not have the type of behavioral outbursts in Father's care that he displays in Mother's care, the [trial c]ourt believes that such a change will not jeopardize the Child's stability. Moreover, the [trial c]ourt notes that Father engages the Child in a number of activities while the Child is in his care, clearly taking advantage of the quality time. Furthermore, Father reports that the Child adjusts well, and is happy, when Father obtains extra periods of custody due to Mother's lack of availability.

*Id.* at 7-8. Although Mother expressed concern about Father possibly using drugs, the trial court found that Mother's claim lacked "explanation or proof," found credible Father's denial that he or any member of his household used drugs, and determined that drug testing was not warranted. *Id.* at 9.

The evidence and testimony presented at the hearing supports the trial court's decision. The parties' co-parenting counselor, Michael Bloesser

---

[4] The weekend custody schedule at the time of the modification hearing was as follows: Weekends 1 and 2 – Child in Mother's care from Friday after school until 5:00 p.m. Sunday; Weekend 3 – Child in Father's care from Weekend 2 – Child in Father's care from 5:00 p.m. Friday until 5:00 p.m. Saturday and in Mother's care from 5:00 p.m. Saturday until 5:00 p.m. Sunday; Weekend 4 – Child in Father's care from Friday after school until 5:00 p.m. Sunday.

("Bloesser"), testified as an expert witness in the area of co-parent counseling, and Mother and Father also provided testimony regarding how things have been going and/or changed since the last custody trial.[5] Bloesser, who has been working with the family since October of 2011, observed Child to be adjusted to the current custody schedule and "happy with it." N.T., 5/28/14, at 7, 16. Mother had only attended five of the at least ten scheduled sessions, making it difficult for Bloesser to work with the parties on their communication. *Id.* at 11. It was Bloesser's opinion that the constant litigation, initiated by Mother, was detrimental to their relationship and made it difficult to co-parent Child. *Id.* at 9, 13. He

---

[5] Our review of the record reveals that the modification proceeding was unorthodox to say the least. The trial court, with Mother's agreement, permitted Father to call Bloesser out of turn, but denied Mother the opportunity to cross-examine the witness, instead calling Mother and Father to tell the judge what was going on and what had changed since the last custody trial held the year before. N.T., 5/28/14, at 20. The court did this because there had been a lot of litigation in the case, and it wanted to limit the testimony to why Mother believed the custody schedule should change and why Father believed that it should not be changed. *Id.* at 21, 26. Furthermore, at Father's counsel's request, the trial court "sanctioned" Mother for failing to timely file her pretrial narrative, precluding Mother from calling any of the witnesses listed thereon. The trial court defends this decision by stating that Mother was ordered to file her pretrial narrative by May 14, 2014, and Mother failed to do so until May 16, 2014, two days beyond the ordered deadline. Trial Court Opinion, 7/28/14, at 11. The record reflects, though, that the modification hearing was continued twice before the May 28th date and that Mother had filed an identical pretrial statement on both December 9, 2013 and February 21, 2014. However, as Mother neither objected to the trial court's determinations nor presented any argument on appeal addressing these issues, she is due no relief.

testified that the parties are able to successfully resolve issues with Child when there are no "court appearances looming[.]" *Id.* at 17.

Mother testified that Child has experienced behavioral outbursts and academic problems, which have "been continually going on through the last couple [of] years." *Id.* at 21. The only new concern Mother testified to was her "suspicion that there has been drugs involved on the father's side." *Id.* at 22. She presented no proof through her own testimony or indication that another witness could confirm her belief. *Id.* We note that this concern was not listed on her pretrial narrative, and she did not state that any witness she planned to call would testify that Father or any of his friends or family members responsible for Child's care were using drugs. *See* Mother's Pretrial Narrative Statement, 12/9/13, 2/21/14, 5/16/14.

Father testified that he does not have concerns about Child's academic performance – that Child's teacher called him in March and let him know that Child is performing at grade level in his reading. N.T., 5/28/14, at 26-27. He presented Child's report card for the third quarter of the 2013-2014 school year and testified that it showed "constant improvement." *Id.* at 27-28. According to Father, Child is excited to go to school. *Id.*

Father also testified that he has not seen any worsening of Child's behaviors in the last year. *Id.* at 29. Child continues to see his therapist for his problems with anxiety. *Id.* at 29-30.

According to Father, Mother has relinquished 13 overnights and 60 hours of other custodial time with Child to him and that Child is happy when he knows he is going to be spending more time at Father's house. *Id.* at 37-38. Regarding Mother's allegation that Father uses drugs, he testified that he has "been sober for over twelve years," and denied that he or any friend or family member responsible for Child's care uses drugs. *Id.* at 38.

As the evidence of record supports the trial court's findings, we find no abuse of discretion in its denial of Mother's request for primary custody of Child. *See J.R.M.*, 33 A.3d at 650. We therefore affirm the trial court's order.

Order affirmed.

Fitzgerald, J. joins the Memorandum.

Mundy, J. concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014