J-A11041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| N.J.D. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| F.T. | : | |
| | : | |
| Appellant | : | No. 7 MDA 2025 |

Appeal from the Order Entered November 27, 2024
In the Court of Common Pleas of Lycoming County Civil Division at
No(s): FC-2019-20548-CU

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: JUNE 10, 2025**

F.T. ("Mother") appeals the order entered by the Court of Common Pleas

of Lycoming County related to the custody to her two children that she shares

with N.J.D. ("Father").[1] For the foregoing reasons, we affirm.

Mother and Father are the biological parents of F.D. (born in May 2014)

and N.D. (born in September 2015) (hereinafter "Children"). On June 28,

2019, Father filed a complaint in the Lycoming County Court of Common Pleas,

seeking custody of the Children along with a request to relocate to

Mechanicsburg, Cumberland County, Pennsylvania. On February 22, 2021,

the trial court awarded Father primary physical custody of the Children and

_____

[*] Former Justice specially assigned to the Superior Court.
[1] Pursuant to an order dated January 31, 2025, Mother's request for the use of the parties' initials was granted and the Prothonotary of this Court was directed to redact the caption without prejudice for the panel to unredact. Given Mother's request, we maintain redaction. ***See*** Pa.R.A.P. 904(b)(2); Pa.R.A.P. 907(a).

granted his relocation request. The trial court awarded Mother partial physical custody of the Children on the weekends. Mother moved to Lancaster County in May 2021 and Dauphin County in May 2022 to be closer to the Children.

On September 20, 2023, Mother filed an Emergency Petition for Special Relief requesting, *inter alia*, primary physical custody of the Children during the 2023-24 academic school year. On October 3, 2023, Mother filed a Petition for Civil Contempt, asserting that Father had moved twice without Mother's consent, first to Lancaster County, and second to Jersey Shore, Lycoming County, Pennsylvania, which ultimately created a two-and-a-half hour travel distance between the parties' residences. Mother also claimed Father had refused to take the Children to extracurricular activities near Mother's home in Middletown, Dauphin County, as Father was unwilling to make an extensive commute for such activities.

On October 13, 2023, the trial court entered an order finding Father in contempt for twice relocating without consent, enrolling the Children in the Jersey Shore School District without consent, and failing to take the Children to their extracurricular activities. The order also awarded Mother physical custody of the Children during the school week and Father physical custody on the weekends. The trial court directed that the Children be enrolled in the elementary school in Mother's school district in Middletown.

Further, the trial court characterized Mother's Petition for Special Relief as a Petition to Modify Custody and scheduled the case for a custody conference on November 28, 2023. The trial court entered an interim custody

- 2 -

order on December 4, 2023 in which it altered the parties' custody schedule to provide that the parties would share nearly equal custody for alternating periods throughout the summer. The interim custody order also addressed the Children's extracurricular activities and provided that "[f]or the next school year, [F.D.] may be enrolled in football and [N.D.] may be enrolled in cheerleading." *Id*. at 5.

Thereafter, the trial court presided over hearings on June 27, 2024, July 2, 2024, July 25, 2024, and July 30, 2024 and considered the testimony of multiple witnesses, including Mother, Father, F.D. (ten years old at that time), and N.D. (seven years old at that time). On August 5, 2024, the trial court discussed its evaluation of the custody factors set forth in 23 Pa.C.S.A. § 5328 on the record and set forth findings of fact and credibility determinations.

Thereafter, on August 12, 2024, the trial court entered a custody order awarding Mother primary physical custody of the Children during the school year and Father partial physical custody every other weekend. The trial court created a modified summer schedule during which Father would have custody of the Children for the majority of the summer except for the Fourth of July holiday and a two-week vacation to allow Mother to take the Children to see her relatives in California and other parts of western United States.

Regarding the Children's extracurricular activities, the trial court directed that the Children "shall be disenrolled from the Jersey Shore Bulldogs cheerleading and football program and enrolled in the Seven Sorrows cheerleading and football program in Middletown, PA." August 2024 Custody

order, 8/12/24, at 5. Section 7H of the custody order included the following language concerning the parties' transportation of the Children to such activities:

> The party that has physical custody of the children at the time the child(ren) are scheduled to participate in extracurricular activities shall be responsible for providing transportation of the child(ren) to and from the extracurricular activities. *However, the parties are not required to transport the child(ren) to any non-mandatory extracurricular activity, including specifically non-mandatory pre-season extracurricular activities.*

August 2024 Custody Order, 8/12/24, at 5 (emphasis added).

Section 11 of the August 2024 Custody order, entitled "Obligations of Shared Legal Custody," provided additional direction regarding extracurricular activities:

> Both parties must agree that a child(ren) can participate in an extra-curricular activity before either party signs the child(ren) up for an activity. Once both parties agree on an activity, both parties shall permit the child(ren) to attend practices and events concerning that activity. The party having physical custody of the child(ren) at the time has the responsibility of providing transportation to and from that activity. In the event such transportation cannot be provided, the custodial party shall immediately notify the other party and provide him or her with the opportunity to transport the child(ren) to the activity.

Order, 8/12/24, at 7.

On August 27, 2024, Mother filed a motion for reconsideration claiming *inter alia* that the trial court's award of primary physical custody to Father for the summer had made it "impossible" for the Children to attend their respective summer football and cheerleading practices in Mother's hometown. Mother argued that the trial court's language relieving the parties from

- 4 -

transporting the Children to "nonmandatory pre-season extracurricular activities" was overly vague and had allowed Father to refuse to transport the Children to a considerable amount of practices (from the end of July through August) in Middletown during his custodial period. Although Mother admitted that the Children's athletic leagues are voluntary, Mother indicated that F.D.'s football coach had told her that all practices were "practically mandatory" in order for children to be able to compete in a safe manner.

To relieve this conflict, Mother suggested that the summer schedule be modified to allow for the Children to be in Mother's custody at the commencement of football and cheerleading practices at the end of July from Monday at 2 p.m. until Friday at 11 a.m. to allow the Children to attend practices on Monday through Thursday evenings. Mother also asked that the Children be returned to her custody one week before school started to allow the Children to get acclimated at her residence to earlier bedtimes, go shopping for clothes and supplies, and to prepare for the start of classes.

On August 30, 2024, the trial court entered an order expressly granting reconsideration and scheduled a hearing for October 28, 2024.[2] The trial court permitted Mother to offer the additional testimony of the Children's football

_____

[2] As the trial court expressly granted reconsideration within thirty days of the entry of its August 12, 2024 custody order, the time to file an appeal was tolled. *See J.P. v. J.S.*, 214 A.3d 1284, 1289 (Pa.Super. 2019) (quoting *Cheathem v. Temple University Hospital*, 743 A.2d 518, 520 (Pa. Super. 1999) (holding that a motion for reconsideration does not toll the appeal period unless the trial court expressly grants reconsideration within 30 days of the appealable order)).

- 5 -

and cheerleading coaches. F.D.'s football coach, Nicholas Smith, testified that it was important for his players to attend every practice in order to learn the skills their position required and to learn to play safely. Notes of Testimony (N.T.), 10/28/24, at 14-16. Mr. Smith indicated that football camp usually would take place at the end of July with regular practices starting the first or second week of August. *Id.* at 17. Mr. Smith acknowledged that F.D.'s inconsistent attendance at the beginning of the fall 2024 season caused him to miss the opportunity to play at the tight end position. *Id.* However, Mr. Smith admitted that F.D. did not miss playing time as a result of his absence from the early practices and was permitted to play both in the offensive and defensive line positions. *Id.* at 19-22.

N.D.'s "pee-wee" cheerleading coach, Chastity Donar, testified that she "like[s] the girls to attend every practice" to practice safe jumps and stunts and to learn their cheers and routines. *Id.* at 25-26. Ms. Donar indicated that N.D.'s cheer schedule was similar to pee-wee football, as camp is held at the end of July and regular practices start in August. *Id.* at 26-27. Ms. Donar indicated that despite N.D.'s absences at the beginning of the fall 2024 season, N.D. was able to cheer for every game and performance that season and served as a base for the cheer stunts. *Id.* at 29.

On November 27, 2024, the trial court entered two separate orders; the first order was an "explanatory order," in which the trial court delineated how it would amend its August 12, 2024 custody order, and the second order was the actual amended custody order.

In the explanatory order, the trial court indicated that it would make numerous changes to the custody schedule including giving Mother a week of custody for the Fourth of July weekend and requiring Father to return the Children to Mother's custody five days before the start of school. With respect to the Children's respective summer football and cheer practices, the explanatory order provided as follows:

> [t]he Court concludes that in light of the age of each child it is in each child's best interest to spend time with their Father and not be required to attend non-mandatory (i.e. pre-season) extracurricular activities during the summer as the playing time with respect to both children was unaffected due to their absences from the non-mandatory (i.e. pre-season) practices of each child's extracurricular activity. However, each party shall be required to transport the child(ren) to mandatory (i.e. regular) practices that commence either the first or second week of August.

Explanatory order, 11/27/24, at 2, ¶ 3.

Although the trial court had claimed in its explanatory order that Section 7H (relating to extracurricular activities) would remain "unchanged," the trial court reworded Section 7H in the amended custody order as follows:

> The party having physical custody of the children at the time has the responsibility of providing transportation to and from extracurricular activities. *Parties are not required to transport the Children to any non-mandatory event, including but not limited to, non-mandatory pre-season extracurricular activities.*

Amended Custody Order, 11/27/24, at 5 (emphasis added). The portion of Section 11 that pertained to extracurricular activities was not changed in the amended custody order.

- 7 -

Mother filed this timely appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother raises the following issues for our review:

1. Whether the Trial Court made an error of law or exercised an abuse of discretion in failing to grant []Mother's request for a summer schedule … that ensured the [C]hildren will attend their respective summer camps for football and cheerleading and all practices for the same yet still provided nearly a shared physical custody summer schedule.

2. Whether the Trial Court made an error of law or exercised an abuse of discretion in awarding []Father custody of the subject Children during the first and second weeks of August and thus subjecting the [C]hildren to a two and half hour car ride from []Father's residence in Jersey Shore, PA to the [C]hildren's cheerleading and football practice in Middletown, PA, the area of []Mother's residence, and then another two and a half hour car ride back to []Father's residence that same evening and several times a week, whereas []Mother's proposed summer schedule would have obviated all this five-hour roundtrip travel for the Children, by placing them in the custody of []Mother for the days/times of their practices during the week and then in the custody of []Father for extended weekends.

3. Whether the Trial Court made an error of law or exercised an abuse of discretion in ordering that the [C]hildren are not required to attend "non-mandatory (i.e., pre-season extracurricular activities during the summer" when the evidence proved that one child suffered from missing so many practices when in []Father's custody that he was not permitted to play in the position of his and his coach's choice and the coaches for both children testified as to the importance of [C]hildren attending all camps and practices for the purposes of their safety and learning the necessary skills to succeed in their respective athletic activities.

4. Whether the Trial Court made an error of law or exercised an abuse of discretion in including contradictory language in its Amended Order, namely, the language in Section 11, paragraph three, sentence two, "Once the parties agree on and activity, both parties shall permit the children to attend

practices and events concerning that activity," … and the language in Section 7H, sentence two, "Parties are not required to transport the [C]hildren to any non-mandatory event, including but not limited to, non-mandatory pre-season extracurricular activities[.]"

5. Whether the Trial Court made an error of law or exercised an abuse of discretion in utilizing terms in the [Untitled] Order and Amended Order that are either not used by the parties and relevant non-parties, are not defined or are unclear and are thus confusing, *inter alia*, mandatory practices/extracurricular activities and language such as "…practices that commence either the first or second week in August."

6. Whether the Trial Court made an error of law or exercised an abuse of discretion in failing to include language that it had set forth in Section 3 of its [Untitled] Order, i.e., "However each party shall be required to transport the child(ren) to mandatory (i.e., regular) practices that commence either the first or second week of August" – in its Amended Order considering the Trial Court likely intends for the Amended Order to be the operative, substantive Order.

Rule 1925(b) statement, at 1-3.

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa.Super. 2013) (quoting **J.R.M. v.**

**J.E.A.**, 33 A.3d 647, 650 (Pa.Super. 2011) (citation omitted)).

Although Mother raises the six individual issues for our review, she includes one argument section to address all the arguments together. We remind Mother that our rules of appellate procedure require that the argument section of a party's brief "shall be divided into as many parts as there are questions to be argued," with distinctively displayed headings "followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Further, Mother offers scant authority for her arguments and does not discuss the majority of her claims with reference to pertinent legal authority. Pa.R.A.P. 2119(a); *see also Elliot-Greenleaf, P.C. v. Rothstein*, 255 A.3d 539, 542 (Pa.Super. 2021) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority") (citation omitted). Nevertheless, we proceed to review the merits of this appeal as the defects in Mother's brief do not prevent this Court from providing meaningful review.[3]

Mother argues that the trial court abused its discretion in rejecting her proposed summer custody schedule for the end of July and August which would allow the Children to attend all of their respective summer football and cheer practices, which Mother argues is in the Children's best interests. Mother also contends that the current custody order is vague and/or inconsistent as it is uncertain whether it deems the Children's regularly scheduled summer football and cheer practices to be mandatory events to

_____

[3] We also note that Father failed to file an appellate brief for our review.

which the parents are required to provide transportation. If such practices are mandatory, Mother finds it unreasonable to have the Children in Father's custody as they would need to make a five-hour round trip several nights a week in August to attend regularly scheduled football and cheer practices.

In Pennsylvania, custody disputes are governed by the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340. "With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *M.J.M.*, 63 A.3d at 334 (quoting *J.R.M.,* 33 A.3d at 650)). To determine the child's best interest when "ordering any form of custody," the trial court must consider the following sixteen factors set forth in 23 Pa.C.S.A. § 5328(a):

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

- 11 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[4]

---

[4] As noted above, the trial court set forth its extensive analysis of the Section 5328 on the record in open court on August 12, 2024. The Legislature amended Section 5328 in adding additional factors (not relevant to the issue raised in this case) in Act No. 2024-8, S.B. No. 55. The effective date of the amendment is August 13, 2024, so we do not cite it here.

As an initial matter, we find it necessary to clarify the trial court's actual holding with respect to the parties' obligations regarding the Children's extracurricular activities. Our review of the trial court's amended custody order and the accompanying clarification order reveals that the trial court did not clearly resolve whether the parties' custody schedule would allow for the Children to attend their summer practices for football and cheerleading in Mother's hometown in Dauphin County during the first two weeks of August. As noted above, the trial court awarded Father custody of the Children in Lycoming County for the entire summer except for a week during the Fourth of July holiday, a two-week vacation with Mother, and five days preceding the start of school.

Although the trial court consistently provided that the parties were required to transport the Children to extracurricular activities during their custodial period, the trial court added an exception by stating that the "parties are not required to transport the Children to any non-mandatory event, including but not limited to, non-mandatory pre-season extracurricular activities." Amended Custody Order, 11/27/24, at 5 (emphasis added).

However, the trial court's "explanatory order" that was filed along with the amended custody order contained contradictory statements about whether the Children's football and cheer practices in early August were mandatory practices. The trial court first states that given the Children's young ages, it would be in their best interests to spend extra time in the summer with Father and "not be required to attend non-mandatory (i.e. pre-

- 13 -

season) extracurricular activities during the summer as the playing time with respect to both children was unaffected due to their absences from the non-mandatory (i.e. pre-season) practices of each child's extracurricular activity." Explanatory order, 11/27/24, at 2, ¶ 3. Nevertheless, in the same paragraph of the explanatory order, the trial court provided that "*each party shall be required to transport the child(ren) to mandatory (i.e. regular) practices that commence either the first or second week of August*." **Id.** (emphasis added).

However, after this appeal was filed, the trial court filed a Rule 1925(a) opinion declaring its intention to find the Children's best interests would be served by spending the first weeks of August with Father rather than attending "non-mandatory/pre-season" practices. The trial court explained that:

> This Court heard testimony from both of the Children's coaches regarding their attendance at practices. Both coaches testified about the importance of attending all practices and the football coach specifically testified that F.D. did not play his preferred position due in part to missing pre-season practices. With that said, he also testified that F.D. did not miss out on any playing time and did not suffer in that aspect for missing pre-season practices. Additionally, N.D. did not suffer from missing any practices at the beginning of August as testified to by her coach. Other than F.D. not playing his preferred position this past year in football, the Court did not hear any other testimony regarding how the Children suffer from missing the first two weeks of practice.
>
> To the issue of travel time to and from pre-season practices, this Court included a provision that does not require either party to transport to any non-mandatory/pre-season practices[, t]herefore, avoiding any unnecessary lengthy travel by either party.
>
> After hearing all the testimony provided at Trial and the Reconsideration hearing, including speaking with the Children, *this Court believes that it is in the best interest of the Children at*

- 14 -

*this point in time to spend the last two weeks of summer with their Father, rather than attending extra non-mandatory/pre-season practices.*

Trial Court Opinion (T.C.O.), 1/27/25, at 3-4 (unpaginated) (emphasis added).

Reviewing the record as whole, it appears that the trial court was attempting to resolve the inconsistency in its explanatory order by confirming its intention to have the Children remain in Father's custody for the first two weeks in August. We direct the trial court upon remand to amend the explanatory order to make it unequivocally clear that it finds the Children's football and cheer practices prior to and during the first and second week of August qualify as "non-mandatory/preseason practices" and to strike any language that suggests that Father is required to transport the Children to Middletown for these particular practices at this point in time.

We now turn to Mother's argument challenging the merits of the trial court's decision that it was in the Children's best interests to award Father custody during the first two weeks of August instead of awarding Mother custody during that period to allow Children to attend their extracurricular activities.

The certified record does not support a finding that the trial court abused its discretion in reaching this determination. After evaluating each of the custody factors set forth in Section 5328, the trial court awarded Mother primary custody during the school year and gave Father partial physical custody every weekend. The trial court established this custody schedule to

promote stability and continuity in the Children's community life so that they would be able to attend weekend events where they were "establishing relationships with their peers inside and outside of school" in Middletown, where they resided with Mother. N.T., 8/5/24, at 19.

However, the trial court also recognized that the Children expressed their own preferences in testifying that they did not feel their custodial schedule provided them with enough time with Father. *Id.* at 14. As such, the trial court provided Father with primary physical custody of the Children during the summer months and awarded Mother custody for a week on the Fourth of July holiday, a two-week vacation to visit extended family, and five days before the start of school.

Although the trial court recognized that the Children did enjoy their extracurricular activities in Mother's hometown, it reiterated that given the ages of the children at that time of the reconsideration hearing (ages 10 and 7, respectively) and their testimony about not having enough time with Father, the trial court found that the Children's custodial time during the summer with Father took precedence over their participation in pee-wee football and cheerleading practices in late July and early August at this point in their lives. The trial court also considered testimony from the Children's coaches, who admitted that the Children were able to fully participate in their fall season despite their absences from the initial summer practices.

Although Mother raises concerns that the Children would be better prepared athletically for their fall season if they could attend the summer

practices, this assertion does not make the trial court's conclusion unreasonable or an abuse of discretion. As the trial court's findings are supported by the competent evidence of record, Mother has provided no basis for this court to disturb the trial court's amended custody order.

For all of the foregoing reasons, we affirm the trial court's amended custody order entered on November 27, 2024. We direct the trial court to amend its explanatory order filed on the same date to strike any language that could be construed to require Father to transport the Children to their summer football and cheer practices during his custodial period in July and August.

Order affirmed. Case remanded with directions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2025